```
                                          FILED _____ LODGED
                                          _____ RECEIVED

                                          MAR 04 2016

                                          CLERK U.S. DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON AT TACOMA
                                    BY                            DEPUTY
```

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON

William L McVeigh

            **Plaintiff(s)**

**vs.**

Climate Changers Inc, JW Brower Heating and
Air Conditioning
International Association of Sheet Metal, Air,
Rail, and Transportaion Workers, Local 66

            **Defendant(s),**

**COMPLAINT** C16-5174RJB

## Parties to this Complaint:

**Plaintiff's  Name, Address and Phone Number**

William L McVeigh
5415 South Orchard Street #131
University Place, WA 98467
(253) 255-1921

**Defendant's Name, Address and Phone Number**

Climate Changers Inc, JW Brower Heating and Air Conditioning
3424 South Tacoma Way
Tacoma, WA 98409
(253) 474-3731

**Defendant's Name, Address and Phone Number**

International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local 66
11831 Beverly Park Road, B-2
Everett, WA 98204
(425) 493-5900

1

**Defendant's Name, Address and Phone Number**

2

3

4

5

**(If you have more defendants, list them using the same outline on another piece of paper. Attach additional sheets, if necessary)**

6

7

**Jurisdiction**
**(Reason your case is being filed in federal court)**

8

9

1. I, William L McVeigh (the Petitioner), respectfully bring this Complaint pursuant to Section 301 of the Labor Managment Relations Act and 29 U.S.C. Section 185. 2. This court has jurisdiction pursuant to: a) 28 U.S.C. Section 1331, b) 28 U.S.C. Section 1343, c) and 28 U.S.C. 1367. 3. The Venue is appropriate because the events that gave rise to this complaint occured in this distrct. 4. I am a citizen and a veteran of the United States of America and live in Pierce County, Washington.  5. Both defendants do business in Pierce County, Washington.

10

11

12

**Statement of Claim:**
**(State here as briefly as possible the facts of your case.)**

13

14

6. On 5 August 2015 I was terminated from JW Brower.

15

7. Christine Saunders worked at JW Brower.

8. Christine Saunders terminated me from JW Brower.

16

9. Marlene Harnish is the owner of JW Brower.

17

10. Marlene Harnish was present while I was terminated.

18

11. Christine Saunders terminated me for "sexual harassment".

12. I did not preform any misconduct while employed at JW Brower.

19

13. Any investigation done for the "sexual harassment" was incomplete.

20

14. Nate Hicks was employed by JW Brower.

21

15. Marlene Harnish, Christine Saunders, and Nate Hicks conspired to terminate me.

16. There was no just cause for my termination.

22

17. I have not received the pay that JW Brower owes me.

23

18. I have not received a terminationslip with the reason(s) for my termination.

24

19 Jeff Stowe is a agent for the International Association of Sheet Metal, Air, Rail, and Transportaion Workers (SMART), Local 66.

25

26

## Statement of Claim
### (continued):

20. Jeff Stowe is my SMART, Local 66 ("union") agent.

21. Jeff Stowe and I exchanged emails, texts, and phone calls.

22. I told Jeff Stowe that I had no idea what the allegations were surrounding my termination.

23. I asked Jeff Stowe if the union's attorney would file a grievance for me.

24. Jeff Stowe told me he didn't know.

25. Jeff Stowe told me to document the events that happened on the 5th of August 2015.

26. On 14 August, I emailed what I remebered to Jeff Stowe.

27. On 14 August Jeff Stowe sent me a email.

28. The email explained:

    a) Dan Hutzenbiler was "Our attorney" (that he worked for the union we were in)

    b) that Dan Hutzenbiler had already sent a request.

    c) that the request was to JW Brower.

    d) that the request was seeking answers to my questions.

    e) and that Jeff would let me know what was found out.

29. JW Brower paid me by check.

30. I received a envelope by mail postmarked 14 Aug 2015.

31. The envelope contained 2 checks.

32. The checks did not add up to the amount I was owed.

33. On 19 August, I informed Jeff Stowe thst I was not paid my final pay.

34. On 19 August, Jeff Stowe requested my pay information.

35. I sent Jeff Stowe my pay information

36. I informed Jeff Stowe that the Employment Security Department (ESD) may not pay me my benefits.

37. I informed Jeff Stowe that I had questions that I needed answered.

38. Jeff Stowe told me to send him my questions.

39. Jeff Stowe ensured me that Dan Hutzenbiler would receive the questions.

40. On19 August 2015, I emailed Jeff Stowe at list of questions.

405 Some of the questions on that list were:

## Statement of Claim
### (continued):

    a) "How long do I have to file a grievance?"

    b) "Has a termination slip been given?"

    c) "Unemployment may suspend my pay from them due to the reason for termination.  Does that seem

       right?"

    d) "I haven't voluntarily been out of work this long.  Has this effected my standing with the Local 66, or is this

       SOP?"

    e) "Should I get a civil attorney?"

    f) "When it's all done, will I be told the actual reasons for my termination?"

    g) "Did Brower break public policy?"

41. On 31 August 2015, I emailed Jeff Stowe with concerns.

42. Some of those concerns were:

    a) I hadn't had a response to my questions.

    b) I wanted to know of any new developments in my situation.

    c) I didn't want any other Local 66 members treated this way.

43. On 31 August 2015,  Jeff Stowe emailed me.

44. That email directed me to call Dan Hutzenbiler the following Thursday.

45. The following Thursday, 3 September 2015, I called Dan Hutzenbiler.

46. Dan hutzenbiler told me that he was busy and try back later.

47. I tried calling Dan Hutzenbiler back on the 4th, 8th, 9th, 10th, 11th, 16th, 22nd, 25th, and the 28th of

    September 2015.

48. I called Dan Hutzenbiler on 6 October 2015.

49. Dan Hutzenbiler returned my call on 6 October 2015.

50. I emailed Dan Hutzenbiler on 19 Septembes 2015.

51. Dan Hutzenbiler returned my email on 23 September 2015.

52. I emailed Dan Hutzenbiler on 30 September 2015.

53. Dan Huzenbiler told me JW Brower's allegations they had given him on 6 October 2015.

54. On 6 October 2015, I heard for the first time the allegations that were made against me.

55. I have requested copies of the allegations that were given to Dan Hutzenbiler several times.

56. On 15 September 2015, ESD denied my benefits.

**Statement of Claim**
(continued):

57. On 22 September I texted Jeff Stowe with my concerns.

58. On 22 September 2015, Jeff Stowe texted that he gets it.

59. On 23 September I got a denial letter from ESD.

60. On 23 September I emailed Jeff Stowe that ESD had denied my benefits.

61. I drafted my own appeal letter to ESD and mailed it around 29 September 2015.

62. On 6 October 2015, I emailed Jeff Stowe information to get my final pay check the second time.

63. On 8 October 2015, I texted Jeff Stowe that I thought Marlene was being used.

64. On 14 October 2015, I emailed Jeff Stowe inquiring about my final pay and my up coming appeal with ESD.

65. The appeal hearing date was 22 October 2015.

66. On 15 October 2015, I emailed Jeff Stowe requesting all the documents that the Local 66 had about me.

67. On 15 October 2015, I met a 3rd party that was complaing about JW Brower.

68. On 15 October 2015, my trust in Jeff Stowe was very low.

69. On 16 October 2015, I tried to get a subpoena for Kristine Misener.

70. The subpoena was denied.

71. On 16 October 2015, I called the Local 66's main office in Everett.

72. On 16 October 2015, I received a email fom Bradley Medlin.

73. Bradley Medlin worked for Dan Hutzenbiler.

74. Bradley Medlin was assigned to help me on the appeal of the ESD hearing.

75. Bradley Medlin asked for anything I could think of that could help to be emailed to him.

76. I emailed Bradley Medlin the information he asked for on 16, 17, and 18 October 2015.

77. On 16 October 2015, I emailed Bradley Medlin asking if I had to know ALL the facts before I could file a grievance.

78. On 20 October 2015, I emailed Bradley Medlin asking to see everything JW Brower had sent to Dan Hutzenbiler.

79. On 20 October, I emailed Bradley Medlin that I felt that there was relevance to discrepancies in what the reasons sent to the union and to ESD.

80. Bradley Medlin did not subpoena anyone for my hearing.

81. Bradley Medlin never sent me any of JW Brower's statements about me.

## Statement of Claim
### (continued):

82. On 16 October 2015, I sent a request for the reason for my termination by certified mail to JW Brower.

83. On 22 October 2015, I had a Office of Administrative Hearings (OAH) hearing by telephone.

84. The hearing was presided over by Administrative Law Judge (ALJ) Mary Ellen Goodwin.

85. Bradley Medlin represented me at the hearing.

86. Christine Saunders represented JW Brower at the hearing.

87. Marlene Harnish and Nate Hicks were present at the hearing.

88. Marlene Harnish, Christine Saunders, Nate Hicks, and I wre sworn in by ALJ Goodwin at the hearing.

89. Marlene Harnish lied at the hearing.

90. Christine Saunders lied at the hearing.

91. Nate hicks lied at the hearing.

92. ALJ Goodwin said Bradley Medlin was hurting my credibility at the hearing more than once.

93. ALJ Goodwin decided that I had not preformed the misconduct that was alleged.

94. On 23 October 2015, I texted back and forth with Jeff Stowe.

95. Jeff Stowe texted that the first day I had told him about my pay problem was the day before 6 October 2015.

96. Jeff Stowe texted "What grievance?"

97. Jeff Stowe texted that my story was not correct.

98. Tim Carter was the business manager for the SMART, Local 66.

99. On 23 October 2015, I left a voice mail for Tim Carter.

100. Tim Carter called me on 26 October 2015 at 6:24 AM.

101. On 27 October 2015, Jeff Stowe emailed me.

102. The email contained the following information:

   a) that Jeff Stowe researched my claim for missing time.

   b) that JW Brower did not receive a time card for my work onthe 3rd of August.

   c) that JW Brower assumed I didn't work that day.

   d) that Marlene researched JW Brower's work logs.

   e) that I did work on the 3rd of August.

   f) that JW Brower was sending me a check for 9.15 hours.

   g) that JW Brower was sending me the termination slip I requested.

103. On 27 October, I emailed Jeff Stowe that I was at the JW Brower office on 31 July, 2015.

## Statement of Claim
### (continued):

104. On 27 October 2015, I emailed Jeff Stowe.

105. My email contained the following:

    a) that the 4th of August was my missing time.

    b) that I was also owed over time.

    c) that this information was already given to him on the 19th of August.

106. I received a letter post marked 29 October 2015 containing my termination slip.

107. The termination slip was dated 10/29.

108. The comments section on the termination slip had "misconduct" written on it.

109. The reason section on the termination slip was not marked.

110. The termination slip was signed "Marlene Harnish".

111. I received a letter post marked 30 October 2015 containing the following:

    a) a check from JW Brower for the amount of $243.61 dated 10/27/15.

    b) a earnings statement with "Per Jeff Stowe 9.15 hours due 10/27/15" written on it.

112. On 5 November 2015, I emailed Jeff Stowe regarding money still owed me that contained the following:

    a) that I still had not received the final pay owed me.

    b) that I still have not received the over time owed me.

    c) a break down of pay owed me.

    d) that JW Brower owed me money according to Article 19 of the collective bargaining agreement.

    e) that at that time I was owed 444 hours of regular pay.

    f) that I needed to be made whole in every way.

113. I received a letter post marked 5 November 2015 signed "Dan Hutzenbiler" stating:

    a) that there was a file on me "Our File No. 3262-052".

    b) that Jeff Stowe investigated the facts surrounding my termination.

    c) that the Local 66 assisted me in insuring that I received my unemployment.

    d) that Mr. Stowe had ensured that I received my final pay owed to me by Brower.

    e) that the Local considers the matter closed.

    f) that I somehow threatened Jeff Stowe.

    g) that threats against the Local's agents would be reported to the authorities.

## Statement of Claim
### (continued):

114. The Department of Labor and Industries (L&I) states I am still owed money for my final pay from JW Brower.

115 L & I states they can't enforce the over time owed according to the collective bargaining agreement.

116. I sent a certified letter requesting a grievance to the Local 66's President Mark Nelson.

117. I never received a response to that letter.

118. I sent a certified letter requesting correction or clarification to JW Brower regarding the allegations made about me.

119. I have received no response to that letter.

120. I filed a complaint with the National Labor Relations Board.

121. The behavior of the following individuals has been outragious:

  a) Marlene Hamish.

  b) Christine Saunders.

  c) Nate Hicks.

  d) Jeff Stowe.

  e) Dan Hutzenbiler.

  f) Bradley Medlin.

122. Mark Nelson has not acted professionally.

123. Climate Changers Inc, JW Brower Heating and Air Conditioning breached the collective bargaining agreement.

124. The International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local 66 did not preform their Duty of Fair Representation.

## Relief:
### (State briefly exactly what you want the court to do for you)

I want the Court to do the following:

1. have JW Brower recind all allegations made about me.

2. penalize the defendants for their behavior.

3. have the defendants pay me for all the days I have been out of work at 8 hours a day pay and benefits for a Tech III at 80% the journeyman's rate(as of 3/3/16 $75,479.00).

4. have the defendants pay me future wages and benefits at the Tech III 80% of a journeyman's rate for 49,920 hours($3,119,001.60).

5. have the defendants pay me $12,476,006.40 for pain, suffering, and ridicule I have had to and will have to endure.

6. Have the defendants pay for attorney's fees.

7. Make me whole in every way.

## Jury Demand:
### (Optional)

I demand a jury trial.

4MAR16

**Date**

**Signature of Plaintiff**

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

**SECTION 3.** Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. * Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members. Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the Labor Agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairmen of the National Joint Adjustment Board.

**SECTION 4.** Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board. Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article. The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety. (Copies of the procedures may be obtained from the National Joint Adjustment Board. *)

**SECTION 5.** A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

**SECTION 6.** In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent Jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

**SECTION 7.** Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

**SECTION 8.** In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(A)  Firms posting a $2,000 surety bond or $2,000 in cash escrow guaranteeing wages and fringe benefits may be entitled to an additional hold back on wages of three (3) days provided this is established as a regular procedure for the firm.

(B)  Any contractor signatory to the Standard Form of Union Agreement who has worked within the area covered by this Agreement, shall upon the request of Local No. 66 furnish a certified copy of each week's payroll and contractual benefits paid to Foremen, Journeymen, and Apprentices or others who fabricate and/or install materials.  If the request for a certified copy of payroll is not complied with in five (5) days, the Union may withdraw the services of the employees subject to this Agreement.  If this is done, the Employer agrees to pay those employees whose services are withdrawn, the full amount of wages for the time actually lost as a result of such action.  Nothing in this section shall be construed as to change the provisions of Article VIII, Section 3, of the Standard Form of Union Agreement.

(C)  Of the one dollar ($1.00) contribution rate to the Northwest Organizational Trust Fund per hour up to ten cents ($0.10) per hour will be allocated to the Youth to Youth Program.

(D)  The Employer shall replace tools stolen while locked in shop or locked job shack or locked job tool box if forced entry is proven at a cap of seven hundred fifty ($750) dollars.

(E)  Hand cleanser materials and paper towels will be made available at the shop for employees to take to field jobs.

(F)  Supervision:  Employers and/or Supervisors shall not be restricted from supervising the activities of workmen coming within the scope of this Agreement.

(G)  All regular paychecks shall have a detachable stub or equivalent, including electronic equivalent, which sets forth the amount of the check, hours worked and an itemized list of all deductions. However any member not having employer provided access who requests a hard copy paystub, as a result of a claimed hardship or extenuating circumstance, shall be provided the hardcopy in the same manner as provided for in SFUA Article VIII, Section 8.

(H)  Each Employer signatory to this Agreement will maintain a recognized place of business which complies with ordinances, laws, or regulations concerning safety as well as health and sanitation as required by City or other governmental agencies.  The Employer agrees to provide for heat in an area of the shop where his employees may hang their clothes and eat their lunches.  Only one Employer in a firm shall use tools to perform work covered by this Agreement and then only in the home shop and only during regular day shift working hours specified for journeymen.  Said working Employer must be so designated at the time of signing the Standard Form of Union Agreement.

(I)  Any Employer who works an employee subject to this Agreement below the established wage scale shall be declared unfair to the Union.

(J)  Agreements shall be signed by an authorized officer of SMACNA, Western Washington, for its members and for other employers who have given the Employers' Association authorization to sign for them. SMACNA, Western Washington, having authorization to sign for an Employer agrees to send a copy of this Agreement together with any addenda to each such Employer.  A certified list of firms for whom the Association signs shall be attached to the master copies of the Agreement. SMACNA, Western Washington, agrees to furnish Sheet Metal Workers Local No. 66 a certified list of those contractors for whom they have signed bargaining authorizations on or before May 1, 2018. It is further agreed that both parties shall submit prior to May 1,

2018 all negotiable items in writing. These demands shall be written in detail and only such items will be negotiated unless mutually agreed upon by both parties. Local No. 66 agrees to notify SMACNA, Western Washington, within twenty days of any and all new contractors signed to the Standard Form of Union Agreement.

(K)   Where the length of the sheet metal installation job is fifteen (15) consecutive calendar days or more, and where three or more men are employed, a secure, dry place must be made available for employees to change clothing and eat their lunch which is large enough to facilitate entire crew.  Heat must be provided for drying wet clothing, shoes, boots, etc., where weather or work is such as to require drying facilities.

(L)   It shall be a violation of this Agreement for any Employer agreeing to have any journeyman or apprentice perform any sheet metal work covered by the claimed jurisdiction of the International Association of Sheet Metal, Air, Rail, and Transportation Workers on a piece work basis, a lump sum basis, or any other basis except that provided and specified in this Agreement.

(M)   Grievances filed by an employee or on behalf of an employee under Article X, Standard Form of Union Agreement, must be filed within thirty (30) days of the occurrence of the facts on which the grievance is based or within thirty (30) days of when the affected individual became aware of the essential facts, whichever is the longer period of time.  This same limitation will apply to any grievance filed by an Employer against an employee.  This limitation will not apply to any grievance filed by the Local Union or the Employer Association on its own behalf.

(N)   Any organization or Trust covered by this agreement may, during the length of this contract, petition the local Labor-Management Committee to address conditions of employment as covered by the agreement.  The local Labor-Management Committee shall meet within fourteen (14) days from the date of receiving the petition and shall be empowered to make any additions, deletions or changes to the contract that it deems appropriate with reference to the petition request.  All actions taken by said committee to require a simple majority vote with labor and management casting an equal number of votes.  Decisions rendered by the local Labor-Management Committee are not subject to appeal.

(O)   It is understood that all mandatory meetings shall be paid at the applicable wage rates per RCW 49.12 and WAC 296-126-002.

(P)   Prescription Safety Glasses shall be replaced at the rate of up to one (1) pair per year, with receipt provided, not to exceed Two Hundred dollars ($200) per year.

(Q)   The parties to this Agreement have adopted the Sheet Metal Workers' National Pension Fund Default Schedule as in effect when the Collective Bargaining Agreement is entered into and amended and as applicable.   The Employer will contribute to the Sheet Metal Workers' National Pension Fund at the hourly contribution rates as set forth in this Agreement, and in accordance with the Default Schedule and the NPF's Trust Document.  The Default Schedule and the NPF Trust Document are incorporated into this Agreement and form a part of this Agreement.  The Employer will pay its required monthly contributions on or before the 15th day of the month, after the month in which Covered Employment was performed.

## ARTICLE XIV
### Business Representatives

F.    All applicants for employment who obtain employment through this hiring hall will be required to meet the member in good standing obligations set forth in the collective bargaining agreements under which they become employed.

G.    The Union agrees to post a copy of these procedures at all Local 66 Hiring Halls.

H.    Building Trades - Only qualified unemployed Building Trades Journey level workers, as defined below, may sign the Building Trades Journey level out of work list. Unemployed means not employed in a position covered by a labor agreement to which Local 66 or other local union affiliated with the SMART is signatory or in a related position such as superintendent with a signatory employer or with a trust or a committee funded through contributions provided for in a Sheet Metal Local labor agreement. Anyone signing the out of work list as a Building Trades Journeyman must: a) have completed a state certified apprenticeship program or b) have passed the Building Trades Journey level test which is available in Everett, and DuPont, or c) demonstrate conclusive proof of six (6) years experience in Building and Construction Sheet Metal Work, and their placement and advancement on the unemployed list shall not be in any way affected by union membership or non-membership.

I.    All other out of work lists may be signed by individuals "off the street." **NOTE**: Please inform those wishing to sign the Shipyard list that the Shipyards only hire qualified Journeyman, however if an individual feels that he or she qualifies, they may sign the book.

J.    To sign an out of work list individuals must either be members in good standing of Local 66 or pay a monthly registration fee equivalent to out of work dues appropriate to list they wish to sign

K.    Persons signing the Building Trades out of work list in any area for the first time or persons transferring into the jurisdiction of Sheet Metal Workers Local 66 shall not be dispatched by the Union to jobs they have solicited or to which they are called by name by an employer, in areas of open solicitation, until having been in the jurisdiction for six consecutive months.

L.    Persons who transfer out of Local 66's jurisdiction shall retain their right of solicitation within Local 66's jurisdiction upon return: provided that they transfer back into Local 66's jurisdiction within a six month period. In the event that a person returns after a six-month absence, he or she shall be subject to the provisions of Section K of these procedures.

M.    Persons quitting a job may solicit jobs and / or be called by name by an employer only after three (3) working days have elapsed following their signing the out of work book.

N.    Dispatch slips for employees will contain all pertinent information regarding name, address, social security number, Employer and person requesting employee, all wages and fringes, job or shop location, etc. Dispatch slips will be furnished to Employee in triplicate and are to be distributed as indicated on each.

O.    All persons dispatched by the Union shall be required to provide the Union with evidence of termination, voluntary quit and of refusal to hire and the reason(s) therefore prior to being dispatched to other job.

P.    All dispatches pursuant to open calls from employers requesting persons who are not called by name shall be dispatched on a first in, first out basis from the appropriate out of work list, if they have indicated on their qualification card that they can perform the type of work required

under the dispatch. Qualification cards may completed at the time of signing the out of work list and may also be updated by an individual at any time. However, any person that refuses such open calls three (3) consecutive times will be moved to the bottom of the out of work list. The Union shall keep dates of such refusals.

Q.   Termination slips must be filled out by the Employer and returned to the Local Union Hiring Hall with reason for termination and comments noted as necessary.

R.   Stand-by shall be limited to five (5) working days. After Five (5) working days the Employer agrees the employee will be terminated, at which time the employee will sign the out of work list.

S.   Persons who accept jobs that last 10 days or less ("short jobs"), will retain their previous position on the out of work list. However they will lose their place on the list after having worked three short jobs or a total of 20 days on consecutive short jobs. A person's name will be removed from the out of work list after ten days employment. Persons who work out of classification shall retain their position on their original out of work list.

T.   Persons may sign their name on the list in any of Local 66's hiring hall locations; however, they may only have their name on one list at any one time, and cannot have their names on any other list of any other local union affiliated with the International Association of Sheet Metal, Air, Rail, and Transportation Workers. Persons wishing to move their name from one list to another must notify the office where their name is currently listed or send a written request asking to be removed and to include which list they wish to have their name to be placed on.

U.   Any person laid off for the purpose of changing dispatch points by an employer cannot be re-dispatched to that employer for a minimum of ten working days.

V.   Any worker (Union or non-union) and any party signatory to a Collective Bargaining Agreement with Local Union 66 and therefore party to these procedures shall have the right to appeal in accordance with Article X of the Standard Form of Union Agreement. Such appeal shall be by registered letter.

## ARTICLE XVII
### Shift Work

Shift work will be permitted provided five (5) consecutive days of shifts, not to include Saturday or Sunday, are worked on the following basis:

Before there can be a second or third shift on the job site, there must be a preceding shift or shifts at said job site; and before there can be a second or third shift at the shop, there must be a preceding shift or shifts at the shop. A second shift must follow a first shift, and a third shift must follow a first and second shift.

(A)   The regularly established starting time of the day shift shall be recognized as the beginning of the twenty-four (24) hour workday period.

(B)   When irregular or broken shifts are worked, overtime rates shall apply before the regular starting time and after the regular quitting time of the shift on which the employee is regularly employed unless mutually agreed to the contrary prior to the starting time on such job.

(C)   Employees transferred from one shift to another unless relieved from work for a minimum of eight (8) hours before starting a new shift, shall be paid two (2) times the rate for the next shift worked.

(D)

1.   First shift or regular daylight shift; eight (8) hours work within and eight and one-half (8 1/2) hour period.  Pay for a full shift shall be a sum equivalent to eight (8) times the hourly rate.

2.   Second shift (swing) shall be eight (8) hours worked within an eight and one-half (8 1/2) hour period at eight (8) times the first shift hourly rate plus a ten percent (10%) premium per hour.

3.   Third shift (graveyard) shall be eight (8) hours worked within and eight and one-half (8 1/2) hour period at eight (8) times the first shift hourly rate plus a fifteen percent (15%) premium per hour.

(E)   A one-half (1/2) hour meal period shall be allowed approximately midway in each shift.  Such meal periods shall not be staggered.

(F)   The first two (2) hours of overtime worked Monday through Friday and the first eight (8) hours worked on first shift on Saturday shall be paid at one and one-half (1 1/2) times the regular shift rate. The first shift on Saturday shall start the same time as the established Monday to Friday shift.  One and one-half (1 1/2) times the regular shift rate will also apply to Saturday second shift, when following Saturday first shift.  All other work performed outside the regular workweek and Sundays and holidays, shall be paid at two (2) times the regular rate of pay.

Upon completion of the regular eight hour shift, the employer shall provide, at the expense to the employer, a fifteen (15) minute break for employees who will be working a minimum of two hours overtime.

If an employee works more than four (4) hours overtime (twelve hours (12) in one day), the Employer shall provide, at the expense of the Employer, one-half (1/2) hour break for meals plus the price of the meal.

(G)   Shift work on Occupied Premises Only:  When a customer or general contractor requires that work on a building cannot occur during regular business hours because the premises are occupied during regular business hours, any eight (8) hour shift ending prior to midnight to be at second shift rate of pay. Any shift extending beyond midnight, the entire shift shall be compensated at the third shift rate of pay. Shift work on occupied premises will be permitted provided three (3) consecutive days of shifts, not to include Saturday or Sunday are worked.

## ARTICLE XVIII
### Foremen

(A)   **Foreman**: It is the intent of both parties to this Agreement that the term "Foreman" shall mean any journeyman employee of an Employer signatory to this Agreement who is designated by such Employer to supervise the activities of three (3) or more sheet metal workers (union employees). A Foreman shall not supervise a crew in excess of twelve (12), i.e., two (2) Foreman for crew of thirteen (13) to twenty-four (24), three (3) Foreman twenty-five (25) to thirty-six (36) etc. Foremen shall receive the appropriate shift regular journeyman taxable rate plus ten percent (10%).

(B)   **General Foreman**: A General Foreman will be appointed on any project with more than thirty (30) sheet metal workers, or when designated by the Employer to direct, supervise, coordinate, or oversee the activities of a combination of thirty (30) or more sheet metal workers and tradesman from multiple crafts from the same Employer on the same jobsite. General Foremen shall receive the appropriate shift regular journeyman taxable rate plus twenty percent (20%).

(C)   When an Employer signatory to the Standard Form of Union Agreement sends one or more of its employees out of its Local's jurisdiction or into the jurisdiction of another Local on a job consisting of three consecutive days or more, at least one of such employees shall receive foreman's pay.

## ARTICLE XIX
### Employee Termination

(A)   If an employee works ten (10) working days or less and is laid off, the employee shall receive 60% of his straight time pay.  Wages to be paid within twenty-four (24) hours and to be made available at the employer's place of business.   Remaining wages due to be paid to the employee at the next regular payday.  Employees who are otherwise discharged shall be paid by 4:30 p.m. on the next regular payday.  Employee will instruct Employer if he will pick up check or wants check mailed.  If envelope containing check is postmarked day payment is due, it will meet "next regular pay day" requirements.   If check is not available to employee as specified above, employee shall receive standby pay which will include all premiums being received by the employee (i.e. foreman pay, shift differential pay) at the rate of eight (8) hours per day for each work day elapsed until he receives check.

(B)   Employees to be terminated for lack of work shall be verbally notified of such termination at least four hours prior to termination.  In case of failure to give such notice, the employee shall receive an additional two hours' pay.

(C)   If an employee quits on his own free will, the Employer need not have such employee's check available until the payday for that pay period.  The Employee may elect to have his check sent to his home or can pick it up at the Employer's place of business.  If check is not ready as due, the same rule as discharged employees shall apply.

(D)   When an Employer terminates an employee, said employee shall receive a termination slip at the end of the shift stating the reason for termination.

## ARTICLE XX
### Industrial Injuries

No employee shall suffer any loss of pay on the day the injury occurs while going to a doctor for any emergency treatment of any injury occurring in the shop or on the job requiring other than first aid treatment.  If any employee is injured in the shop or on a job to such an extent that the doctor recommends that the said employee cease work for the day, such employee shall be paid for eight (8) hours work for that day.

## ARTICLE XXI
### Shop Steward

Stewards may be appointed within the rules of the Union to any job or shop of the Employer.  The Union agrees to recognize that the person designated as Steward shall receive his fair share of the

# ADDENDUM #3 - SERVICE ADDENDUM
## TO THE
## STANDARD FORM OF UNION AGREEMENT

This Addendum amends the Standard Form of Union Agreement only to the extent specifically stated and all other Articles, Sections and Addendums shall remain in full force and effect without modification or exceptions.

No Journeyman Sheet Metal Worker or Apprentice, presently on the Employer's payroll, at the time of the signing of this Addendum shall suffer any reduction of pay or loss of any fringe benefit or any other monetary compensation of benefits as a result of the signing of the Addendum, unless mutually agreed to by the Employer and Union and nothing shall preclude the payment of a higher rate at the discretion of the Employer.

## ARTICLE I

### SECTION A:  Service Journeyman Rate of pay - Seattle/Everett/Bremerton/Tacoma Areas

Wages and Benefits to be allocated and paid in accordance with the "Western Washington Wage Sheets" signed by SMACNA Western Washington, Affiliated Independent Contractor, or unaffiliated Independent Contractor and SMART Local 66, which shall be distributed annually in the month of May.

1) Journeyman Total Package shall increase $2.46, to $72.83, effective 6-1-15, including $0.70 allocated for NWHC, $0.35 allocated to Northwest Pension, and $1.41 allocated to wages.

2) Journeyman Total Package shall increase $2.55 effective 6-1-16, including $0.50 allocated for NWHC, $0.35 allocated to Northwest Pension, and $1.70 allocated for wages.

3) Journeyman Total Package shall increase $2.64 effective 6-1-17, including $0.50 allocated for NWHC, $0.35 allocated to Northwest Pension, and $1.79 allocated for wages.

## ARTICLE II
## Service Defined

**Section 1.** Service is hereby defined as repair, replacement, testing, analysis, maintenance and adjustment necessary to make operative any heating, ventilating, air conditioning and refrigeration systems.

## ARTICLE III
## Coverage

**Section 1.** Journeymen sheet metal servicemen and apprentices covered by this Addendum who are trained and qualified to do service work may perform installation of any HVAC system under the terms, conditions, and working rules of Addendum 1.

## ARTICLE IV
## Hours of Work

**Section 1.** The workday shall consist of up to ten (10) consecutive hours of work between the hours of 6:00 a.m. and 7:00 p.m. with one-half (1/2) hour for lunch.

**Section 2.** The workweek may consist of no less than four (4) consecutive days beginning Monday, or Tuesday, through Friday, or Saturday, for a forty (40) hour week with at least two (2) consecutive days off.

**Section 3.** All hours worked before 6:00 a.m. and after 7:00 p.m. shall be paid at the rate of one and one-half (1 1/2) times the established regular hourly rate.

**Section 4.** All hours worked over a forty (40) hour week shall be paid at one and one-half (1 1/2) times the established regular hourly rate.

A. Service Journeyman, Apprentices and Technicians who report to work by the direction of the Employer between the hours of 12:00 midnight and 6:00 a.m. shall be paid a minimum of two hours pay at two (2) times the established regular hourly rate. This does not apply when the work is started prior to 12:00 midnight and extends past midnight.

B. Any work performed on Sunday and any holidays described in the Standard Form of Union Agreement shall be paid at two (2) times the established regular hourly rate.

a. It is agreed that the observed holiday, Christmas Eve Day and the Friday following Thanksgiving are optional holidays. Employees shall select at least one of these days as a holiday. The employer may retain up to fifty percent (50%) of their employees on these days at their discretion. Regular rate of pay would apply to these days.

C. If required to be on call, Service Journeyman, Apprentices and Technicians shall receive the sum of fifty dollars ($50) per day for standby pay. This section shall be waived if a service technician is given a truck on a full-time basis.

D. Shift Break: On over time work consisting of eight (8) hours or more or a combination of over time and straight time consisting of eight (8) hours or more, straight time may not be reverted to without an eight (8) hour break.

E. There will be a one-half (1/2) hour lunch break, on employers time, after twelve (12) hours, if shift continues. Pay will be at time and a half (1-1/2 x) for one-half (1/2) hour lunch break.

## ARTICLE V
## Service Apprentice Program

**Section 1.** A Sheet Metal Service Apprentice, where capable, shall not be required to work under the supervision of a Journeyman. It shall be a violation of this Agreement for an Employer to replace a Journeyman Serviceman with an Apprentice.

**Section 2.** A graduated wage scale for Service apprentices shall be established and maintained on the following percentage basis of the established wage rate of journeyman sheet metal workers:

| | |
|---|---|
| First Year | 45% |
| Second Year | First half 50% - Second half 55% |
| Third Year | First half 60% - Second half 65% |
| Fourth Year | First half 70% - Second half 75% |
| Fifth Year | First half 80%- Second half 85% |

## ARTICLE VI

**verizon**wireless

## Voice, continued

**Best scanned image available.**

| Date | Number | Rate | Usage Type | | Location | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|--------|------|------------|--|----------|------|-----------------|----------------------|-------|
| | | | | | | | — | — | — |
| 8/05 5:10P | 253–219–1644 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 5 | — | — | — |
| 8/06 11:49A | 253–219–1644 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 3 | — | — | — |

*253-617-7909 (Office)*
*253-964-1020 (Fax)*
*jeffs@smw66.org*
*Please visit our website:*
*http://www.smw66.org*



<image001.jpg>

CONFIDENTIAL COMMUNICATION – This communication constitutes an electronic communication within the meaning of
the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient
intended by the sender.  This communication and any files transmitted with it are confidential and intended solely for the use
of the individual or entity to whom they are addressed.  If you are not the intended recipient, any disclosure, copying,
distribution, or use of any of the contents of the communication and/or transmitted files is STRICTLY PROHIBITED.  If you
have received this message in error, please notify the sender immediately and destroy the original transmission and all
copies.  Please note that any views or opinions presented in this email or solely those of the author and do not necessarily
represent those of Sheet Metal Workers Local 66.  If you have properly received this communication, do not disclose or
otherwise distribute it or its contents except to authorized individuals.  Finally, the recipient should check this email and any
attachments for the presence of viruses.  Local 66 accepts no liability for any damage caused by any virus transmitted by this
communication and/or transmitted files.

---

**From:** Bill McVeigh [mailto:bill.mcveigh@live.com]
**Sent:** Friday, August 14, 2015 8:33 AM
**To:** Jeff Stowe
**Subject:** Termination



On August 5, 2015  I got to the office Marlene, the owner, Kris, someone hired to work on
the computers, and Nate, a field employee, were in the office when I was fired from JW
Brower by Kris for "sexual harassment".  I asked for specifics from her and she replied,
"The state of Washington doesn't require me to tell you." and that I needed to leave.  From
that point Marlene tried to tell me the  "why" but Kris kept cutting her off telling her to be
quiet.  I was instructed to give back any paperwork I had that was the company's and leave.
I told Kris I needed to get my tools.

  I gathered up my tools from the box van shaking my head.  Racking my brain for anything
I had done that could be remotely thought of as harassment.  Marlene and Kris had both
followed me in to the shop area.  I kept asking for specifics but got the same answer from
Kris.  Marlene would try and respond but Kris would tell her not to say anything.  Now
Nate walks in,  and I remember that earlier in the day he had threatened and tried to
intimidate me physically.  I had already informed Marlene about it.  I made sure he knew
I'd let the Union know about his earlier actions.  He said he would report me to the EPA
(before his threats a recovery tank in the back of the box van was leaking) and tell the
Union that I was giving Marlene paperwork from Sunset Air (I had given her some to use
as examples to help with bids, maintenance, or service instead of writing everything down
on little pieces of paperwork).

After I had all my tools outside of the company doors I asked for my documents back, specifically my report of passing my 06 administrators test. The day before Marlene and Nate were talking about needing him to take a class so he could get his admin license. I told them I had taken and passed a few years ago totally by accident. Marlene and I went into the office where she returned my papers. I asked her if she wanted me to finish a bid that had to be in for Charles Wright the next day that I planned to do that night. She gave me back the paperwork and I left.

That evening I thought about what everyone would say about the "sexual harassment" accusations. I needed the people closest to me to hear it from me not any other source. If you have ever had to tell your Dad, Son, or Girlfriend something as horrible as that you would no how painful it is even though your not guilty.

Since then nothing but sleepless nights tossing and turning trying to figure out what went wrong. I felt it was the perfect job for my skill set and only 3 or 4 minutes from my house. The only thing I can come up with is either Marlene wants her company to not prosper, Kris doesn't want Marlene's company to prosper, or Nate does't want anyone to find out he's well below average at his job. Maybe a combination of those. It's frustrating me to this second. I hope that you will be able to get me some sort of closure on this.

I don't know if I should go to a doctor to get help for not sleeping. The phone hasn't rang for work. My Girlfriend and I seem to argue every day over stupid things. I went from the top of a mountain to the bottom in a avalanche since that day.

Please let me know anything you can, as soon as you can.

Bill McVeigh

foracer

11 AUG 15

11 AUG 15

11 SEP 15

11 SEP 15



**Best scanned image available.**



36,37,38,39

| | Invoice Number | Account Number | Date Due | Page |
| --- | --- | --- | --- | --- |
| | 1424656580 | 772754322–00001 | 09/26/15 | 7 of 13 |

## Best scanned image available.

## Detail for William McVeigh: 253–255–1921

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Peak | PlanAllow | Federal WA WA | Federalway WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Spanaway WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Spanaway WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Seattle WA | 6 | --- | --- | --- |
| | | | Off–Peak | N&W | Spanaway WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Off–Peak | N&W | Spanaway WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Off–Peak | N&W | Spanaway WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Graham WA | Tacoma WA | 16 | --- | --- | --- |
| | | | Off–Peak | N&W | Spanaway WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Auburn WA | 3 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Lakewood WA | Wshngtnzn1 DC | 2 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 4 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 7 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacomawvly WA | 5 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Fife WA | Tacoma WA | 7 | --- | --- | --- |
| | | | Peak | M2MAllow | Milton WA | Peoria AZ | 4 | --- | --- | --- |
| | | | Peak | PlanAllow | Puyallup WA | Tacoma WA | 4 | --- | --- | --- |
| | | | Peak | PlanAllow | Puyallup WA | Puyallup WA | 32 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Reno NV | 9 | --- | --- | --- |
| | | | Peak | PlanAllow,CallWait | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| 8/11 | 2:59P | 253–219–1644 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 4 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| 8/11 | 5:10P | 253–219–1644 | Peak | M2MAllow | Tacoma WA | Incoming CL | 7 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Reno NV | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 18 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Gig Harbor WA | Seattle WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Gig Harbor WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |

00A9903-0333724-0000007 of 0000016-C22-RG-4501-I-49352

TACOMA WA 983
OLYMPIA WA
14 AUG 2015 PM 2 L

William McVeigh
5415 A Orchard #131
University Place, Wa 98467

9846735341S

Peter Ray
3234 B St
M #24 TLC
Tacoma, Wa 98409

# RE: Termination

From: **Jeff Stowe** (JeffS@smw66.org)
Sent:   Wed 8/19/15 9:40 AM
To:     William McVeigh (bill.mcveigh@live.com)

*35*

Send me a break down of the hours you worked per day for this pay period.

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 08/19/2015 10:26 AM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Re: Termination

*33*

Just opened the mail and got Brower's letter with my final checks.  According to my records and I got shorted over 10 hours.

Sent from my iPhone

On Aug 14, 2015, at 1:56 PM, Jeff Stowe <JeffS@smw66.org> wrote:

   Bill,

*28*

Thanks for your email.  Our Attorney Dan Hutzenbiler has already sent a request to Brower seeking answers to your questions.  I will let you know what we find out.


*Jeffrey W. Stowe*
*Business Representative*

*Sheet Metal Workers Local 66*
*2725 Williamson Place Suite 101*
*DuPont WA 98327*

*253-219-1644 (Cell)*

**Best scanned image available.**

**From: Email** bill.mcveigh@live.com
**Subject:** Re: Termination
**Date:** August 19, 2015 at 11:03 AM
**To:** Jeff Stowe JeffS@smw66.org

Aug 3  7:30-430

Aug 4  7:30-5 and 8-9:15 pm

Aug 5  7:45-4

Sent from my iPhone

On Aug 19, 2015, at 10:39 AM, Jeff Stowe <JeffS@smw66.org> wrote:

Send me a break down of the hours you worked per day for this pay period.

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 08/19/2015 10:26 AM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Re: Termination

Just opened the mail and got Brower's letter with my final checks.  According to my records and I got shorted over 10 hours.

Sent from my iPhone

On Aug 14, 2015, at 1:56 PM, Jeff Stowe <JeffS@smw66.org> wrote:

Bill,

Thanks for your email.  Our Attorney Dan Hutzenbiler has already sent a request to Brower seeking answers to your questions.  I will let you know what we find out.

*Jeffrey W. Stowe*
*Business Representative*

# RE: Unemployment                    37

From:  **Jeff Stowe (JeffS@smw66.org)**
Sent:   Wed 9/23/15 7:14 AM
To:     William McVeigh (bill.mcveigh@live.com)

Dan just said he sent you an email for you to call him on Friday,  did you receive it?


Sent from my Verizon Wireless 4G LTE smartphone


-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 09/23/2015 7:55 AM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Unemployment

I picked up my mail after our texting yesterday and got a letter stating that I will not get any benefits for
the reason of misconduct at the workplace
I have the right to appeal and am drafting my own response
I wanted to know how much of the story the attorney wanted me to write
And I still don't know what the incident was or with who

Bill mcveigh


Sent from my iPhone



## Detail for William McVeigh: 253—255—1921

### Voice, continued

*Best scanned image available.*

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| 8/24 | 9:28A | 253—219—1644 | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | 4:03P | 253—872—5581 | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | University WA | Seattle WA | 4 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 8 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Off—Peak | N&W | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Toll—Free CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Toll—Free CL | 5 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |

## Summary for Vanessa McVeigh: 253—777—5740

### Your Plan

**MORE EVERY Loyal Tlk TXT 4GB**
(see pg 3)

### Monthly Charges

| | | |
|---|---|---|
| Smartphone Line Access | 09/02 – 10/01 | 40.00 |
| $15 Off Month to Month | 09/02 – 10/01 | -15.00 |
| | | **$25.00** |

0049903-0333723-0000009 s-0 0000016-C22-RG-A501-49952

Print                                                                          Close

# Questions                    *40*

From: **Bill McVeigh** (bill.mcveigh@live.com)
Sent: Tue 8/25/15 8:25 AM
To:     jeffs@smw66.org (jeffs@smw66.org)

The Unemployment questionnaire asks for detailed answers about my termination.
How specific should I get?  Or should I let you look at them?

Unemployment may suspend my pay from them due to the reason for termination.  Does that seem
right?

Is there a way to get Brower to not spread the reason for termination any further than they already have?

When it's all done, will I be told the actual reason for my termination?

Did Brower break public policy?

How long do I have to file a grievance?

Has a termination slip been given?

Should I get a Civil attorney?

Since Brower didn't have a standard guidelines for me what is the procedure for termination they should
follow?

I haven't voluntarily been out of work this long.  Has this effected my standing with the Local 66, or is
this  SOP ?

# RE: Questions

41, 42

From: **Jeff Stowe** (JeffS@smw66.org)
Sent: Mon 8/31/15 8:11 PM
To:    William McVeigh (bill.mcveigh@live.com)

Please call our attorney on Thursday, Dan Hutzenbiler at 206-467-6700.  You are not bugging me.

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 08/31/2015 7:16 PM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Questions

Hey Jeff, sorry about bugging you again but I haven't gotten a response about the questions I had submitted last week.  Just seeing if there is any new information you can give me.  Not knowing what's going on weighs heavily on me every day.  I have thoughts about why certain personnel at Brower needed me gone and don't know if I should share those or not.  Hopefully there is a way to stop this behavior from happening to any other Local 66 workers.

Sent from my iPhone

43  44

# RE: Questions

From: **Jeff Stowe** (JeffS@smw66.org)
Sent:  Mon 8/31/15 8:11 PM
To:    William McVeigh (bill.mcveigh@live.com)

Please call our attorney on Thursday, Dan Hutzenbiler at 206-467-6700.  You are not bugging me.

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 08/31/2015 7:16 PM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Questions

Hey Jeff, sorry about bugging you again but I haven't gotten a response about the questions I had submitted last week.  Just seeing if there is any new information you can give me.  Not knowing what's going on weighs heavily on me every day.  I have thoughts about why certain personnel at Brower needed me gone and don't know if I should share those or not.  Hopefully there is a way to stop this behavior from happening to any other Local 66 workers.

Sent from my iPhone

**Best scanned image available.**

**verizon**

Case 3:16-cv-05174-RJB   Document 5   Filed 03/18/16   Page 32 of 88

| Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|
| 1433003625 | 772754322--00001 | 10/27/15 | 4 of 11 |

## Usage and Purchase Charges

| Voice | | Allowance | Used | Billable | Cost |
|---|---|---|---|---|---|
| Shared | *minutes* | unlimited | 165 | --- | --- |
| Mobile to Mobile | *minutes* | unlimited | 175 | --- | --- |
| Night/Weekend | *minutes* | unlimited | 39 | --- | --- |
| Total Voice | | | | | $.00 |

| Messaging | | | | | |
|---|---|---|---|---|---|
| Text, Picture & Video | *messages* | unlimited | 125 | --- | --- |
| Total Messaging | | | | | $.00 |

| Data | | | | | |
|---|---|---|---|---|---|
| Gigabyte Usage | *gigabytes* | 4.000 (shared) | .005 | --- | --- |
| Data Promo (01/02/15) – 2GB SHR Data x 12mos | *gigabytes* | 2.000 (shared) | .031 | --- | --- |
| Total Data | | | | | $.00 |
| **Total Usage and Purchase Charges** | | | | | **$.00** |

**Verizon Wireless' Surcharges+**

| | |
|---|---|
| Fed Universal Service Charge | .58 |
| Regulatory Charge | .21 |
| Administrative Charge | .95 |
| | **$1.74** |

**Taxes, Governmental Surcharges and Fees+**

| | |
|---|---|
| WA State 911 Fee | .25 |
| Pierce Cnty 911 Surchg | .70 |
| WA State Sales Tax–Telecom | 1.77 |
| Pierce Cnty Sales Tax–Telecom | .38 |
| | **$3.10** |

**Total Current Charges for 253–255–1921**      **$57.70**

+Percentage–based taxes, fees, and surcharges apply to charges for this line, including overage charges, plus this line's share of account charges.

# Detail for William McVeigh: 253–255–1921

## Voice

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/02 | 12:28P | 253–405–4453 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 9/02 | 6:30P | 253–988–5722 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| 9/02 | 6:54P | 253–307–8412 | Peak | M2MAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/02 | 8:07P | 775–379–1860 | Peak | PlanAllow | Tacoma WA | Reno NV | 1 | --- | --- | --- |
| 9/03 | 9:35A | 253–209–7328 | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/03 | 10:36A | 253–209–7328 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/03 | 10:38A | 253–209–7328 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 9/03 | 10:46A | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |



0336441 | 824477 | 004 of 0000014-C22-RC-4601-36477



**verizon**

| | | Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|---|---|
| | | 1433003625 | 772754322–00001 | 10/27/15 | 5 of 11 |

## Detail for William McVeigh: 253–255–1921

## Voice, continued

**Best scanned image available.**

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| | | | | | Tacoma WA | Reno NV | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Reno NV | 4 | --- | --- | --- |
| 9/03 | 2:37P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 3 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Reno NV | 4 | --- | --- | --- |
| | | | | | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Tacomawvly WA | 3 | --- | --- | --- |
| 9/04 | 2:08P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/08 | 2:04P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/09 | 1:26P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 4 | --- | --- | --- |
| | | | | | Tacoma WA | Reno NV | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/10 | 9:17A | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/11 | 9:44A | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 5 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 10 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Auburn WA | 9 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 4 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacomawvly WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Gig Harbor WA | Peoria AZ | 4 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 9 | --- | --- | --- |
| | | | Off–Peak | N&W | Tacoma WA | Gig Harbor WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/16 | 3:37P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |



**verizon**✓

## Detail for William McVeigh: 253–255–1921

*Best scanned image available.*

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Tacoma WA | Tacoma WA | 3 | — | — | — |
| 9/22 | 2:45P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 3 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 2 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 9 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 3 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 4 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Gig Harbor WA | 1 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 5 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 3 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | PlanAllow | University WA | Incoming CL | 5 | — | — | — |
| | | | Peak | PlanAllow | University WA | Incoming CL | 1 | — | — | — |
| | | | | | Tacoma WA | Gig Harbor WA | 2 | — | — | — |
| 9/25 | 1:01P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 3 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | | Allow | University WA | Incoming CL | 1 | — | — | — |
| | | | | Allow | Tacoma WA | Seattle WA | 1 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 2 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 3 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | | | Tacoma WA | Gig Harbor WA | 2 | — | — | — |
| 9/28 | 6:56A | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | — | — | — |
| | | | | | Tacoma WA | Incoming CL | 2 | — | — | — |
| | | | | | Tacoma WA | Tacoma WA | 2 | — | — | — |
| | | | | PlanAllow | Tacoma WA | Tacoma WA | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | — | — | — |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 2 | — | — | — |
| | | | Peak | PlanAllow | Fife WA | Incoming CL | 2 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 8 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 16 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 4 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | — | — | — |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | — | — | — |

**verizon**✓

48,49

| | | | Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|---|---|---|
| | | | 1441385099 | 772754322−00001 | 11/26/15 | 5 of 17 |

**Detail for William McVeigh: 253−255−1921**

*Best scanned image available.*

## Voice

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 9 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 6 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 10/06 | 10:09A | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| 10/06 | 10:11A | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Incoming CL | 28 | --- | --- | --- |
| | | | | | Dupont WA | Tacoma WA | 10 | --- | --- | --- |
| | | | | PlanAllow | Tacoma WA | Toll−Free CL | 2 | --- | --- | --- |
| | | | | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | M2MAllow | Tacoma WA | Peoria AZ | 17 | --- | --- | --- |
| | | | | PlanAllow | Tacoma WA | Incoming CL | 15 | --- | --- | --- |
| | | | | PlanAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | | M2MAllow | Tacoma WA | Seattle WA | 6 | --- | --- | --- |
| | | | | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | | PlanAllow | Tacoma WA | Toll−Free CL | 4 | --- | --- | --- |
| | | | | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 12 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 5 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 4 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 7 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 5 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 26 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 7 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Olympia WA | 5 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 4 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Rochester WA | 6 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Seattle WA | 78 | --- | --- | --- |

# verizon

*Best scanned image available.*

## Detail for William McVeigh: 253–255–1921

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|------|-----------|-------------|-------------|------|-----------------|----------------------|-------|
| 9/22 | 1:24P | 253–677–5531 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| 9/22 | 2:45P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 3 | --- | --- | --- |
| 9/22 | 7:41P | 253–376–2985 | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/23 | 11:19A | 253–565–5544 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| 9/23 | 11:30A | 206–707–6428 | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| 9/23 | 11:51A | 253–565–5544 | Peak | PlanAllow | Tacoma WA | Incoming CL | 9 | --- | --- | --- |
| 9/23 | 12:06P | 206–707–6428 | Peak | M2MAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/23 | 2:26P | 253–677–5531 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 9/23 | 4:33P | 800–318–6022 | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 4 | --- | --- | --- |
| 9/23 | 5:19P | 253–777–5740 | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/23 | 7:01P | 253–861–4458 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/24 | 8:00A | 253–549–6798 | Peak | M2MAllow | Tacoma WA | Gig Harbor WA | 1 | --- | --- | --- |
| 9/24 | 9:05A | 253–405–3870 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 5 | --- | --- | --- |
| 9/24 | 10:31A | 623–512–2444 | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/24 | 10:41A | 623–512–2444 | Peak | M2MAllow | Tacoma WA | Peoria AZ | 3 | --- | --- | --- |
| 9/24 | 11:29A | 253–677–5531 | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/24 | 11:41A | 775–379–1860 | Peak | PlanAllow | University WA | Incoming CL | 5 | --- | --- | --- |
| 9/24 | 11:54A | 775–379–1860 | Peak | PlanAllow | University WA | Incoming CL | 1 | --- | --- | --- |
| 9/24 | 4:14P | 253–549–6798 | Peak | M2MAllow | Tacoma WA | Gig Harbor WA | 2 | --- | --- | --- |
| 9/25 | 1:01P | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 3 | --- | --- | --- |
| 9/25 | 1:23P | 253–202–4598 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/25 | 3:10P | 253–507–0289 | Peak | PlanAllow | University WA | Incoming CL | 1 | --- | --- | --- |
| 9/25 | 3:52P | 206–707–6428 | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| 9/26 | 10:54A | 253–279–5381 | Off–Peak | N&W | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/26 | 11:02A | 253–279–5381 | Off–Peak | N&W | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/26 | 4:23P | 253–988–5722 | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 9/27 | 10:02A | 253–549–6798 | Off–Peak | N&W | Tacoma WA | Gig Harbor WA | 2 | --- | --- | --- |
| 9/28 | 6:56A | 206–467–6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| 9/28 | 12:09P | 253–209–5798 | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/29 | 11:20A | 253–677–5531 | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| 9/29 | 11:22A | 253–209–5798 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 9/29 | 12:17P | 253–209–5798 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 9/29 | 12:24P | 206–707–6428 | Peak | M2MAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| 9/29 | 12:25P | 253–209–5798 | Peak | PlanAllow | Fife WA | Incoming CL | 2 | --- | --- | --- |
| 9/29 | 2:08P | 253–209–5798 | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| 9/29 | 2:40P | 206–463–9591 | Peak | PlanAllow | Tacoma WA | Incoming CL | 8 | --- | --- | --- |
| 9/30 | 12:59P | 253–474–5425 | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| 9/30 | 4:42P | 425–622–4222 | Peak | PlanAllow | Tacoma WA | Incoming CL | 16 | --- | --- | --- |
| 9/30 | 5:42P | 253–209–7328 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 10/01 | 11:18A | 800–318–6022 | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 4 | --- | --- | --- |
| 10/01 | 3:39P | 253–474–5425 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 10/01 | 6:01P | 253–988–5722 | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |

Print                                                                                                          Close

# Fwd: Update

50

From: **William McVeigh** (bill.mcveigh@live.com)
~~nt:~~  Fri 9/18/15 8:17 AM
~~o:~~    dhutzenbiler@unionattorneysnw.com (dhutzenbiler@unionattorneysnw.com)


Sent from my iPhone

Begin forwarded message:


> **From:** William McVeigh <bill.mcveigh@live.com>
> **Date:** September 18, 2015 at 9:12:58 AM PDT
> **To:** "dhutzenber@unionattorneysnw.com" <dhutzenber@unionattorneysnw.com>
> **Subject: Update**


Hi.  My name is Bill Mcveigh.  On the 5th of August I was wrongfully terminated from my
Union job at JW Brower.  Jeff Stowe let me know you were looking into it for me.
    Jeff said you are currently very busy with negotiations.  I did manage to reach you once
but I needed to call you back.  I've left a few voice mails at your office, but figured email
would be easier for you.
    I'm just hoping that there is some sort of update you could send me and answer a few
questions.  I am planning on filing a wrongful termination suit against the company but
don't know if you are doing that for me or I need to get a different labor attorney to
represent me.
    Right now I'm feeling very isolated and depressed over the whole matter and need a little
direction.  No employer wants to hire me now and unemployment so far is not paying any
of my benefits due to the unsubstantiated reason for my termination.  Brower crossed a
boundary that is inexcusable and so far out of left field it still leaves me having sleepless
nights trying to figure it out.
    If you get a little time I would love to hear your professional views and what my course
should be.  Thanks


Sent from my iPhone

Text Message
Thu, Sep 22, 9:14 AM

Jeff Stowe

Bill right now Dan is very busy with the Northshore issue, keep calling his office and leave him a message if you don't reach him.

Thanks again
I
Hate to bug you but this is my reputation and my honor that's been blown to bits I want to get back to work and really really want to know what exact thing brower is lying about

Jeff Stowe

Yes, Bill I get it.  To my knowledge nothing has been said outside of Brower.

Send

22 SEP15

**Best scanned image available.**



22 SEP 15

8/ OCT 15

**Best scanned image available.**

William McVeigh
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
5415  So Orchard ST #131
University Place WA 98467
253-255-1921

The decision I would like to appeal is regarding my termination from J W Brower on the grounds of work connected misconduct.

At no time while employed by J W Brower did I ever engage in misconduct of any kind.  The reason that was given to me was "sexual harassment".  I never received any written or verbal warnings at any time while I worked there.

I was terminated by a woman named Kris that, from what I was told by my boss/employer, was hired to do some sort of forensic work on the company computers but was not a company employee.  When I was terminated my boss/employer, Marlene, and a co-worker, Nate were present.  On August 5, 2015 Nate had threatened to do physical harm to me.  I walked away, returned to the office, and let Marlene know what happened.  Later that afternoon when I came into the gave Marlene my paperwork.  Kris then asked me if I knew the definition of sexual harassment.  I didn't know exactly but answered the best I could.  That is when Kris said I was terminated.  I asked what for and she said sexual harassment.  I then asked what I did and she replied that the state of Washington didn't require her to tell me and that if she would have known sooner she would have done it sooner.  I asked several more times while gathering my tools what I had specifically done and each time the same response about her not required to tell me.

To this moment writing this appeal I still don't know what I did.  I never received a termination slip and got shorted 10 hours on my final paycheck.  I do know right from wrong and moral from immoral.  There was two times that I was asked to stop doing something.  The first was to stop wearing colon which I did and the second was to not spit on the ground outside the shop which I did.  I don't believe that a rational person would think either of those things would be grounds for termination with only one warning.

The past several weeks I have spent many sleepless nights thinking about what I got terminated for.  I still have no clue.  If You have any questions please feel free to call me or email me at bill.McVeigh@live.com.  Please thank Bruce/875 at the state office for me.  He was very timely with his response to my email.

William McVeigh

62

# Re: Unemployment

From: **William McVeigh** (bill.mcveigh@live.com)
Sent: Mon 10/05/15 7:00 AM
To: Jeff Stowe (JeffS@smw66.org)

I seem to be getting nowhere with Dan.  He must be very busy.  Do you have Ny other suggestions?
I've waited long enough and am still wondering what I did wrong

Sent from my iPhone

On Sep 23, 2015, at 8:14 AM, Jeff Stowe <JeffS@smw66.org> wrote:

Dan just said he sent you an email for you to call him on Friday,  did you receive it?

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 09/23/2015 7:55 AM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Unemployment

I picked up my mail after our texting yesterday and got a letter stating that I will not get any
benefits for the reason of misconduct at the workplace
I have the right to appeal and am drafting my own response
I wanted to know how much of the story the attorney wanted me to write
And I still don't know what the incident was or with who

Bill mcveigh

Sent from my iPhone

*given TV*

*Jeff 4*

Print                                                                                    Close

# mcveigh termination

From: **Bill McVeigh** (bill.mcveigh@live.com)
Sent:  Tue 10/06/15 1:43 PM
To:    jeffs@smw66.org

      **14 attachments**
      Scan0003.pdf (160.6 KB) , Scan0001.pdf (247.3 KB) , Scan0004.pdf (162.9 KB) ,
      Scan0002.pdf (226.0 KB) , Scan0004.pdf (162.9 KB) , Scan0005.pdf (164.4 KB) ,
      Scan0006.pdf (341.8 KB) , Scan0007.pdf (224.2 KB) , Scan0008.pdf (159.2 KB) ,
      Scan0009.pdf (355.4 KB) , Scan0013.pdf (170.0 KB) , Scan0010.pdf (249.9 KB) ,
      Scan0011.pdf (394.2 KB) , Scan0012.pdf (416.2 KB)

this is about all I have.  I should have been paid on the 7th the remainder of what they owed to me.
got it on the 14th but was shorted 10.25 hours.  that would be my day tues the 4th.  pay and benefits

Best scanned image available.

Print                                                                                          Close

# (No Subject)

From: **Bill McVeigh** (bill.mcveigh@live.com)
Sent:   Wed 10/14/15 6:47 PM
To:     jeffs@smw66.org (jeffs@smw66.org)

☐ 1 attachment
Scan.pdf (2.1 MB)  ⟵ *PAPERS FROM ESD APPEAL & Reasons*

Jeff this is Bill McVeigh getting back to you with some interesting info
First of all I ended up not making any hot line calls.  I thought real hard about it and a comment popped
up in my head that Marlene had said to me regarding my cell phone for work purposes. It was a
comment about not telling you because she was suppose to be providing them.  all of that with a big
smile.  She made me think she was joking.  and I dismissed it.   Is this true? if so she is not so innocent.
 It did get me snooping about a couple of things.  Marlene made it seem to me she was recently
widowed and told that old employees  Cal and i forget the other guys name but that they were only semi
retired.  being lead to believe this I told customers when they asked me.  I found out that neither was
true.  There's other things we can talk about later that made me change my mind.
    I attached the documents that Dan wanted the last I talked to him.  If you can forward them to him
for me.  If you didn't get my email with my stubs in it to get me my unpaid hours let me know and I'll
send them again(I'm feeling the effects of the unemployment benefits being denied to me and every
little bit helps).
    As for the documents I sent today, let Dan know that I can get 1 witness to directly testify that Nate's
statement he signed is untrue.  And I'm pretty sure I can get 2 more if he wants me to.  I just don't know
how much fire power he wants.  If you look at the hand written document you can see how Marlene's
signature doesn't match the author?  I bet I know who wrote it.  And almost the exact words Nate used.
 Looks like the author try's to make it look like maybe was trying to make it look like Marlene wrote but
there is tip offs she didn't, like using the word "our" instead of "my" and the handwriting.  Other things
to.  The "admin assistant" that is so offended is not mentioned by name and would then all become hear
say anyway.  Nate just so happened to re tell her story to.  Once again hear say.  She left on such bad
terms I'm thinking she would be more than happy to testify about what actually happened and those are
the only comments that could be remotely construed as harassment.  Some things are quoted that I said
but don't match on both documents so if I did say them then witch one did I say?  The truth is being
twisted and direct lies are being told specifically try to ruin my professional image.  Deception is in
play.  I would like to know who is the person referred to as "another employee" did the reporting that
these things were done to the business consultant.  I wasn't aware of one at the shop along with that
business consultant to my knowledge shouldn't be interfering (almost every day I was there) work.
 Which I can let you know happened.
    Marlene letting Nate get away with telling gay jokes at the office and to customers is a double
standard.  I believe I got fired for whisleblowing.  That's against the law.  I have some hard proof and
witnesses.  Nate's lies, the deceptions given to the state, and Marlene's failure to protect me as a
employee can land the bunch of them into trouble.

                                          Bill
PS my girlfriend seems to think maybe Marlene's signature is photo shopped in because of how it never
breaks the line and thinks the date underneath is odd.  Along with if the paperwork was sent in the mail

on the 20th and received again on the 24th, then that doesn't leave much time to get it prepaired unless you just transfer it over.  there is plenty of other mistakes if you want more pointed out give me a call.  I hope this will be enough to file a grievance so there can be a sit down.

Print                                                   Close

# Fwd: Unemployment

From: **Jeff Stowe** (JeffS@smw66.org)
Sent: Mon 10/05/15 7:45 AM
To: William McVeigh (bill.mcveigh@live.com)

    ☐ 1 attachment
        Re Unemployment.eml (7.6 KB)

**Best scanned image available.**

See below from Dan

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: Daniel Hutzenbiler <dhutzenbiler@unionattorneysnw.com>
Date: 10/05/2015 8:44 AM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Re: Unemployment

--Forwarded Message Attachment--
From: dhutzenbiler@unionattorneysnw.com
To: JeffS@smw66.org
Subject: Re: Unemployment
Date: Mon, 5 Oct 2015 15:44:11 +0000

Tell him to call me tomorrow at 10 am.

Very truly yours,

Daniel Hutzenbiler

Robblee Detwiler & Black

(206) 467-6700

(206) 467-7589 (fax)

2101 4th Ave., Ste. 1000

# Paperwork

From: **William McVeigh** (bill.mcveigh@live.com)
Sent:  Thu 10/15/15 7:58 AM
To:    Jeff Stowe (JeffS@smw66.org)


Hey Jeff

I would like any paperwork that has been sent to Dan regarding my termination or my character. Any information or documents that you have collected, ie paystubs, time cards, personnel file, I would like copies of also. I really would like them today. I can pick them up from you office anytime that's works. My personnel file from Brower should have gotten to the 66 by now they have had more than a reasonable amount of time. If I need to I can go over there and get it since the law says reasonable time walking into their office and requesting it should be less than 5 minutes. But to make sure no more lies get spread I will need to record the whole encounter. If they don't turn over a copy to me then I'm forced to call the police for what is called a civil assist. That's messy but I'm backed into a corner now trying to get the truth brought out. You mentioned that Dan wanted to handle my representation in this and not any of his other personnel but I have very strong case and need the attention now before it is to late again. If Dan is still swamped with the north shore thing then can you just ask him to give me any one he can that can be a advocate for me? I have to be prepared for the hearing on the 22. In my Union resources pamphlet there is quiet a few attorneys I could use I just don't know if they are any good at this.

If I don't get my benefits from the state then I'm financially over. I hope to hear from you soon. At this point any procrastination will make my bad situation much much worse


Sent from my iPhone

# verizon

## Detail for William McVeigh: 253−255−1921

## Voice, continued

### Best scanned image available.

| | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 33 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 20 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 5 | --- | --- | --- |
| | | | Off−Peak | N&W,CallWait | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Seattle WA | 29 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Peoria AZ | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 26 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 9 | --- | --- | --- |
| | 10/19 | 9:12A | 253−474−3731 | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 25 | --- | --- | --- |
| | 10/19 | 10:07A | 253−617−7909 | Peak | PlanAllow | Tacoma WA | Tacoma WA | 7 | --- | --- | --- |
| | 10/19 | 10:29A | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 129 | --- | --- | --- |
| | | | | | Tacoma WA | Tacoma WA | 32 | --- | --- | --- |
| | 10/19 | 1:20P | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | 10/19 | 1:21P | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 13 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 23 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 38 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 10 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 6 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Toll−Free CL | 4 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Auburn WA | 14 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 3 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | Off−Peak | N&W | Tacoma WA | Incoming CL | 7 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 2 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Seattle WA | 4 | --- | --- | --- |
| | | | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | | | Tacoma WA | Incoming CL | 6 | --- | --- | --- |
| | 10/22 | 9:46A | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Incoming CL | 19 | --- | --- | --- |
| | 10/22 | 10:15A | 877−668−4490 | Peak | PlanAllow | Tacoma WA | Toll−Free CL | 131 | --- | --- | --- |
| | 10/22 | 12:27P | 206−467−6700 | Peak | PlanAllow | Tacoma WA | Seattle WA | 16 | --- | --- | --- |
| | | | | | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |

On Oct 16, 2015, at 3:56 PM, Bradley Medlin <bmedlin@unionattorneysnw.com> wrote:

Hello Bill,

I am the senior associate at Robblee Detwiler & Black.  I work with Dan Hutzenbiler.  I am going to be assisting with your unemployment hearing next week.  I want to set up a time to talk with you and prepare for the hearing.  Do you have time open on Monday or Tuesday to chat?

Thanks,

Bradley Medlin

Attorney at Law

Robblee Detwiler & Black

2101 Fourth Avenue, Suite 1000│Seattle, WA 98121

☎ (206) 467-6700│Fax (206) 467-7589

Please Note: The information in this e-mail message may be legally privileged and contain confidential information intended only for the use of the individual(s) named above. If you are not the intended recipient of this email, any further dissemination, distribution, or forwarding of this e-mail message is strictly prohibited. If you have received this e-mail in error, please notify the sender and promptly delete the original message. Thank you.

# RE: Unemployment Hearing re J.W. Brower

From:  **Bill McVeigh** (bill.mcveigh@live.com)

Sent:  Fri 10/16/15 4:33 PM

To:  Bradley Medlin (bmedlin@unionattorneysnw.com)

75

The employer has alleged "sexual harassment" the ESD has alleged that I knowingly broke the rules and to my knowledge assumes that they know what the standard of conduct and behavior is.  I allege if deception and lying is part of that standard then Marlene, Christine, and Nate should also be terminated and not be able to get their benefits.

---

From: bmedlin@unionattorneysnw.com
To: bill.mcveigh@live.com
Subject: RE: Unemployment Hearing re J.W. Brower
Date: Fri, 16 Oct 2015 23:30:23 +0000

Hi Bill,

Let's plan to discuss your case on Monday at 10:30 a.m.  Please call my office at 206-467-6700 at that time.  In advance of our call, email me anything you think might be helpful for your case.

The employer has alleged you committed "misconduct."  This is a discharge case so it will be the employer's burden to establish misconduct.  That is what the ALJ will evaluate.

Thanks,

**Bradley Medlin**

Attorney at Law

Robblee Detwiler & Black

**2101 Fourth Avenue, Suite 1000 | Seattle, WA 98121**

☎ **(206) 467-6700 | Fax (206) 467-7589**

# Re: Unemployment Hearing re J.W. Brower

From:  **William McVeigh** (bill.mcveigh@live.com)
Sent:  Fri 10/16/15 3:53 PM
To:    Bradley Medlin (bmedlin@unionattorneysnw.com)

1030 it is.  I need a copy of my personnel file  I asked for it by phone yesterday at 135 any reasonable person could have copied it by now.  I live less than 5 minutes from their shop so pick up is no problem. I scent a certified letter for my reason of discharge today.  But that could take 10 days to get back. Since I read the reasons I've been compiling numerous cracks in the misleading material statements they sent to our state's unemployment office.  I am looking forward to your view title 50 and if you think Rcw 9a.76.175 applies to the statements made against me.  I'll go in and get my personnel file Monday morning using a civil assist so at least I have that.  But that might not have anything in it. Sent from my iPhone

Best scanned image available.

# Re: Unemployment Hearing re J.W. Brower

76

From:  **William McVeigh** (bill.mcveigh@live.com)
Sent:  Fri 10/16/15 10:15 PM
To:    Bradley Medlin (bmedlin@unionattorneysnw.com)

I'd like to know how Nate got to look at my time cards.  He states I was 1.5 hours late I was at that job before him so maybe Marlene told him or he was in my personnel file.  Check out how he says it was the 4 th and slides in that the admin assistant was leaving the next day.  Guess what he adds that to make it seem like she was still working there to make the complaint.  She left the week before. Marlene's statement that Christine Saunders business consultant filled out reads another employee trying to make it sound like there was 2 complaints by 2 people.  But now Marlene and Christine can say it was a honest mistake either way.  My comments about anything was rainbow was house which Marlene used just as many times as I did due to the difficulty identifying the house.  I'm alleging he is implying that I meant they were lesbians living there.  He was the only one to have been there he diagnosed it why did I need to go there to fix his call.  The fact of rainbows of all different varieties were on the outside of the house this the rainbow house.  The Fallenberg/Proost family can prove his deceit Joe Deters can let you know he was never threatened by me and witnesses Nates verbal assault of the afternoon of the 5th and Kristine Misener the girl that is the made up victim that is giving the complaint to the business consultant can let you know if she ever complained formally to any one about me.  She had her two weeks put in before I started there.  Oh by the way earlier in the day I was verbally assaulted and physically intimidated by Nate which I promptly reported directly to Marlene asking her to keep us apart for a while then the assault in front of the Lennox guys joe and I think ty and Marlene which I did walk away both times.  Then I come back after I walked out finishing work that needed to be done a little over an hour and the three of them made up this story of sexual harassment to get rid of me.  For the rest of my life I'm going to have to have a helmet cam to get everything on record.  I can give you plenty more if you still have time to help me with this appeal.  I've still got another to come and I've found a lot of agencies that can investigate the harassment, discrimination, and cunning tactics to not only mislead my state but my Union.  They have most people fooled and thinking I'm a monster, they've withheld money from me, this has caused my health to decline and my 5 year relationship with my lady is close to lost.  Right now I'm not very proud of being a vet knowing that I was protecting these people's rights while mine have been demolished.   I've got more but now my eyes are tearing up some and I'm on the couch again all thanks to the folks at JW Brower

Sent from my iPhone

Best scanned image available.

# Re: Unemployment Hearing re J.W. Brower

From: **William McVeigh** (bill.mcveigh@live.com)
Sent: Sat 10/17/15 12:17 AM
To:    Bradley Medlin (bmedlin@unionattorneysnw.com)

Sorry but I can't sleep and there's so much more.  The quote from honest Abe he who represents himself has a fool for a client I dint just put in quotations I don't know if it's exactly correct but if you change it to a fool who represents a client is a fool. If both were in quotes which would you say Abe said.  Well with quotes on a material statement I would imply that the quoted part is exactly what was said or quotes wouldn't be added.   I hope you can let me know where or to whom I need to file papers that will get each contributor their gross misdemeanor award for the essay contest.  5 grand and a year in jail is the top prize they might have to split it because I can't tell which portion is most deceiving.  I think just signing it and playing the poor old lady or the guy that has saved the day ( make sure to ask me about all the fixes I had to do because of him. How did he find out brower anyway? Now I asked a question because I didn't know.  Don't you think Marlene might think my story was true not the one Nate spun?  We both are in agreement I hope by this time that it was Nate that allegedly started this conspiracy to ruin me due to his fear that I would uncover the facts about his qualifications as a tech.  I allege Marlene is just as guilty as the rest if not had the most impact on the blindside I was dealt.  Not only for not protecting my rights but Using parts of what I said and making the sound like I was deliberately trying to harass someone.  She was the only person that was there for the cookie comment and she knows each of us got 1 cookie and that my comment had no overtone of harassment.  The another employee part makes it sound like two employees complained on or before my termination but Nate says he had no idea why when he came back I was getting the ax.  It must have been the gunman on the grassy knoll.  Sorry I didn't mean to smell that letter in a earlier email.  But if Nate wrote out his statement on the 13th and I got hamstringed on the 5th and the packet to them was sent on the 20th.  Well let's join then in make believe land and say one employee was the admin assistant well Nate couldn't be the second person because he didn't know I was getting dismissed or what for that day.  So that leaves someone on the grassy knoll.  No more employees unless they are try to say I complained about myself.  They haven't subpoenaed me yet but you never can tell when you get a group like this together.  Wish I was a fly on the wall for that little scheme session.  Along with Nate writes he was on his way home and got a call to come back and writes that " I did not know at that time why he had been dismissed" implying that at the time he drafted this letter he did know why.  That's the correct way to quote something, even though he's fibbing.  Why is Marlene letting my personnel information to my co workers? He starts his statement with his title at work and it's not boss.  That one can be added to my grievance list?  So now I get to assume this guy who dislikes me already enough to lie to get rid of me now my address social both my kids names he has.  So I have a few small problems in my life compiled with loss of insurance for my kids and these bumps over my scalp which I can't say what they are because I don't get insurance either can't afford to have them looked at.  While the three crooks are probably sound asleep while I type this.  I'm hoping you can use a little of this to at least get it back to me getting some sleep. Thanks

Sent from my iPhone

On Oct 16, 2015, at 4:30 PM, Bradley Medlin <bmedlin@unionattorneysnw.com> wrote:

Best scanned image available

From: **Email** bill.mcveigh@live.com
Subject: RE: Unemployment Hearing re J.W. Brower
Date: October 18, 2015 at 3:02 PM
To: Bradley Medlin bmedlin@unionattorneysnw.com



I know I'm probably repeating myself, but this has consumed me for a long time now and I think you should be aware of my standpoint. I feel I can come up with sufficient proof to show that there has been a conspiracy at JW Brower to soil my professional image and maliciously take steps to restrict me from making the facts more transparent by manufacturing then implying that I had knowingly committed a violation that was against federal law and against company standards for the purpose of concealing the harassment, threats, and bullying of me and my reporting of it to the Union.

Several of my rights have been trampled. I feel an obligation to inform the 66 about the violations of our contract(which I have done but more keep on coming up) and of me, but need to get some help to clear my reputation and my honor. I want to know how many of my issues the Union is interested in taking care of. I do realize that there is a part of me that wants retaliation, but I don't want it to keep happening to any other Union members. A union inside of a Union has been formed along with another presumed Union member siding with a employer without first trying to inform the 66 of what was going on. There is a Union member and his family that are going to be impacted by everything that has happened. I believe he is innocent of any of the crimes against me and being mislead when it comes to procedure and proper way of conducting one self in our Union and out in the field. If after reviewing some of the testimony and the documentation, you think that my conclusions have any merit, then please help him get out of his situation with some sort of guidance to avoid corruption. If you can't help him hopefully you can pass the information on to a representative authorized to and willing to help him. He is very young and impressionable and I believe financially couldn't be able to have what has happened to me happen to him and his family.

---

From: bmedlin@unionattorneysnw.com
To: bill.mcveigh@live.com
CC: dhutzenbiler@unionattorneysnw.com
Subject: Unemployment Hearing re J.W. Brower
Date: Fri, 16 Oct 2015 22:56:06 +0000

Hello Bill,

Subject: RE: Unemployment Hearing re J.W. Brower
Date: October 18, 2015 at 12:43 PM
To: Bradley Medlin bmedlin@unionattorneysnw.com

-RJB   Document 5   Filed 03/18/16   Page 54 of 88

76

I need to apologize about my ranting. I realize that you've been thrown into the mix and don't know what's been going on with me the last couple of months. I do appreciate you giving me a hand. I know Dan has had in hands full and I hope he doesn't feel I was upset with him. I feel that the 24th hour has arrived and that I'm standing alone after asking for help repeatedly.

When it comes down to it I do know I'm not a attorney, so just tell me to shut up if you need to. I do feel with a little examination any reasonable person can look at the hand written statement and typed statement that JW Brower provided the employment office for my termination could find find a few misleading and false statements. When I read your email to me about why they were saying they terminated me I got offended and that led to those emails. The things going through my head at that point were very irrational and pointing out simple facts was more of my way of venting which is a waste of your time. I don't know the relevance of anything I mailed. I feel very wronged. I love being in the 66 and was feeling very let down in the way things are being handled(not on your end). The numerous violations of our bargaining agreement that I have brought up, have not been addressed as far as I know. I feel that being informed or being in the "loop" should also be apart of  the representation.

The first time I heard anything about the reasons of my termination was when Dan got back to me directly, having to take needed time away from the North Shore issue, instead of me getting my information from a liaison, which was 2 months after the termination. Along with getting copies of allegations this week and still not having copies of reasoning sent to Dan(which I didn't ask for yet) for my termination, I have had very little time to prepare. After in depth research I learned I have the right to subpoena, which when I asked the ALJ for it got denied with the explanation that it was a untimely request. All I could find on the amount of time needed was 5 days with no mention of "business days". That was a dagger.

I was told by a non union source that i tracked down on my own accord, that your office should of received the name and number of Kristine Misener, which is the implied person that made a complaint against me. I have not moved on this information or tried to contacted her in anyway, anticipating some sort of contact letting me know that there is a giant hole that has been filled and to rest easy for the weekend. I don't know the procedure for release of information to me but after

so many attempts by me to get some help, I would think it would be nearly instant.

I have contacted other people that can be eyewitnesses to the accusations. I would like assistance in locking down either testimonials or phone in testimony from these individuals along with Kristine. I would also like my personnel file, which I've asked for by phone and the chance to cross examine my accusers. I don't know if the ALJ shot down my subpoenas of these individuals due to timelyness like I was told or to protect my accusers right to not self incriminate themselves but without those thing it makes my defense weaker and I feel I should be "Union Tough".

I look forward to our scheduled conversation. Thank you for making some time for me.

# Re: Unemployment Hearing re J.W. Brower

From:   **William McVeigh** (bill.mcveigh@live.com)
Sent:   Fri 10/16/15 4:11 PM
To:     Bradley Medlin (bmedlin@unionattorneysnw.com)

I need to know if ALL the facts have to be known about my complaints of Brower's rule breaking before I send in my grievance?

Sent from my iPhone

Case 3:16-cv-05174-RJB   Document 5   Filed 03/18/16   Page 57 of 88

I know I'm not the only thing you have in your plate, but I was wondering if you had a chance to view the reasons that brower reported to Dan regarding my termination.  I would like to review it also.  I think I have a point of view that can be helpful .  Please email me the information as soon as you can  so I can get back to you in a timely matter.

Sent from my iPhone

Best scanned image available.

# Re: Unemployment Hearing re J.W. Brower

From: **William McVeigh** (bill.mcveigh@live.com)
Sent: Tue 10/20/15 9:44 AM
To:   Bradley Medlin (bmedlin@unionattorneysnw.com)

I was told Dan had inquired about the reasons I was terminated prior to my claim being denied.  If the reasons given to him differ from the ones given to the state, I feel there is a relevance.  I would like to see all the reasons brower has given the Union.  I have copies of what was given to the State already.  If I need to request the paperwork through a formal route, please advise me of that resource.

Sent from my iPhone

On Oct 20, 2015, at 9:53 AM, Bradley Medlin <bmedlin@unionattorneysnw.com> wrote:

Good Morning Bill,


I briefly spoke with Dan after our lengthy conversation yesterday.  Which reasons are you referring to?  The paperwork submitted to ESD lists four grounds for termination.  Those are the ones we discussed on the phone.  The ESD hearing will be confined to those issues.


Thanks,


Bradley Medlin

Attorney at Law


Robblee Detwiler & Black

2101 Fourth Avenue, Suite 1000│Seattle, WA 98121

☎ (206) 467-6700│Fax (206) 467-7589

Please Note: The information in this e-mail message may be legally privileged and contain confidential information intended only for the use of the individual(s) named above. If you are not the intended recipient of this email, any further dissemination, distribution, or forwarding of this e-mail message is strictly prohibited. If you have received this e-mail in error, please notify the sender and promptly delete the original message. Thank you.

*82*

*October 14, 2015*



*To: Marlene Harnish*
*owner of JW Brower:*

*I am formally requesting a letter stating the reason for my termination. Please send response to:*

*William McVeigh*
*5415 So Orchard St #131*
*University Place, Wa*
*98467*

*Or: Call  253-255-1921 to arrange a pick up time/place.*

*William McVeigh*

of
Termination



MARLENE HANSEN
of PO Box no.
ZZ... Tacoma WA
ZZ... Federal Way
TACOMA WA
EVERGREEN

10/16/2015

Postmark
Here

| Return Receipt | 1 | $2.80 |

(@@USPS Return Receipt #)
(9590940301465086182952)

Total                          $6.74

Cash                           $7.00
Change                        ($0.26)

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

For tracking or inquiries go to
USPS.com or call 1-800-222-1811.

After delivery, use this tracking
number to track your Return Receipt.

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to
usps.com/clicknship to print shipping
labels with postage. For other
information call 1-800-ASK-USPS.

*****************************************
Get your mail when and where you want
it with a secure Post Office Box. Sign
up for a box online at
usps.com/poboxes.
*****************************************

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business

HELP US SERVE YOU BETTER

TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

Go to:
https://postalexperience.com/Pos

or scan this code with
your mobile device:



Print                                                                                                                                Close

# Re: Questions

From:  **William McVeigh** (bill.mcveigh@live.com)
Sent:   Wed 10/21/15 2:02 PM
To:     Jeff Stowe (JeffS@smw66.org)

I haven't received any word about me getting shorted on my last check yet. It's been over 2 months and there hasn't been any sort of acknowledgement even if brower has been asked about it let alone the fact how late what they did send me was.  I have given the information you asked for twice and have been waiting for a update.  All I want is what's fair following the guidelines of the collective bargaining agreement.  If the contract doesn't include helping me with my final pay or helping me with the wrongful termination.  I need to know promptly due to the deadlines that the EEOC and L&I have.  I have been feeling a little pushed to the side and totally left out of the loop.

On Aug 31, 2015, at 9:11 PM, Jeff Stowe <JeffS@smw66.org> wrote:

> Please call our attorney on Thursday, Dan Hutzenbiler at 206-467-6700.  You are not
> bugging me.
>
>
>
> Sent from my Verizon Wireless 4G LTE smartphone

Best scanned image available.

-------- Original message --------
From: William McVeigh <bill.mcveigh@live.com>
Date: 08/31/2015 7:16 PM (GMT-08:00)
To: Jeff Stowe <JeffS@smw66.org>
Subject: Questions

Hey Jeff, sorry about bugging you again but I haven't gotten a response about the questions I had submitted last week.  Just seeing if there is any new information you can give me. Not knowing what's going on weighs heavily on me every day.  I have thoughts about why certain personnel at Brower needed me gone and don't know if I should share those or not. Hopefully there is a way to stop this behavior from happening to any other Local 66 workers.

Sent from my iPhone

**STATE OF WASHINGTON**
**OFFICE OF ADMINISTRATIVE HEARINGS**
**FOR THE EMPLOYMENT SECURITY DEPARTMENT**

| In re: | DOCKET NO:    102015-00100 |
| --- | --- |
| WILLIAM MCVEIGH | INITIAL ORDER |
| Claimant | |

**ID: 536081677**     **BYE: 08/13/2016**     **UIO: 780**     **CID: 951384598**

**Hearing:**  This case was heard by Administrative Law Judge, Mary Ellen Goodwin, on October 22, 2015, after notice to all interested parties.

**Persons Present:**  Claimant, William McVeigh; Claimant's Attorney, Brad Medlin; Employer, J.W. Brower Heating by Chris Saunders, Business Consultant; Marlene Harnish, Owner; Nate Hicks, Service Technician.

**Exhibits:**  The Administrative Law Judge admitted Exhibits 1 through 11.

The purpose of the hearing was to determine whether:

- The claimant was discharged from employment for deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee as defined in RCW 50.04.294(1)(b), or other misconduct pursuant to RCW 50.20.066, or voluntarily quit without good cause pursuant to RCW 50.20.050.
- The claimant was able to, available for, and actively seeking work in accordance with the standards of RCW 50.20.010(1)(c).

After considering all of the evidence, the Administrative Law Judge enters the following Findings of Fact, Conclusions of Law and Initial Order.

**FINDINGS OF FACT**

1. On September 15, 2015, the Employment Security Department issued a written Determination Notice which denied the claimant unemployment benefits.  The claimant is the Appellant in this matter and filed an appeal on September 29, 2015.

2. The claimant began working for the employer as a service technician on July 22, 2015.

3. The claimant worked full time and he last earned $32.59 an hour.

4. On August 5, 2015, the employer terminated the claimant from his job.

5. When Chris Saunders, the employer's business consultant, terminated the claimant, she told the claimant he was being terminated for sexual harassment.

6. During the weeks that the claimant worked for the employer, the claimant made inappropriate comments about the sexual preferences of some of the employer's customers and he made an inappropriate comment to a female co-worker.

7. The claimant denied making the inappropriate comments alleged by the employer.

8. The employer is a small business with less than 8 employees.

9. The employer does not have written rules or polices regarding work-related conduct that are communicated to employees when they hired.

10. The employer relies on state and federal rules and regulations as guides for work-related conduct.   The employer posts some of those rules and regulations at the worksite.

11. When the claimant was hired, the employer did not provide the claimant with any verbal or written expectations regarding work-related conduct.

12. The claimant never received any verbal or written warnings from the employer regarding his inappropriate conduct.

13. When the claimant asked about a new employee being a playboy center fold, the owner of the business merely told him that his question was inappropriate.

14. Because of the inappropriate comments the claimant made when referring to the some of the employer's customers and the inappropriate comment he made to a co-worker about wanting to eat her cookie, the claimant was fired.

15. The claimant's inappropriate comments offended the moral beliefs and values of the employer and other employees.

16. From the weeks beginning August 2, 2015 through the week ending October 17, 2015, the claimant was physically able to work, was available for work, and he was a member in good standing of a full-referral union and on the union's out-of-work list.

## CONCLUSIONS OF LAW

1. The Office of Administrative Hearings has jurisdiction to hear and decide this appeal under RCW, Chapters 50.32 and 34.05.

2. The provisions of RCW 50.20.010(1)(c) apply.

3. A claimant must be able and willing to work, available for, and actively seeking work.

4. Because the claimant was physically able to work, was available for work, and actively sought work from the week beginning August 2, 2015 through the week ending October 17, 2015, he met the requirements of RCW 50.20.010(1)(c) and is not subject to denial pursuant to the above-cited statute and related regulations.

5. The provisions of RCW 50.04.294, RCW 50.20.066, WAC 192-150-085, WAC 192-150-200, WAC 192-150-205, and WAC 192-150-210 apply.

6. A claimant shall be disqualified from benefits if discharged from employment for misconduct.  RCW 50.04.294(1)(b) defines misconduct, in part, as deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee.  WAC 192-150-200(1) and (2), provide that the action or behavior must be connected with the claimant's work and result in harm or create the potential for harm to the employer's interests.  This harm may be tangible, such as damage to equipment or property, or intangible, such as damage to the employer's reputation or a negative impact on staff morale.  Misconduct does not include inadvertence or ordinary negligence in isolated instances, good faith errors in judgment, inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity.  See RCW 50.04.294(3).

7. No proof of harm to the employer is required when the misconduct is on-the-job.  Harm to the employer is inherent in this case and is not required to be established.  *In re Kost*, Empl. Sec. Comm'r Dec.2d 987 (2013).

8. Misconduct may not be inferred or presumed and it is the employer's burden to prove misconduct by a preponderance of the evidence.  *In re Hawkins*, Empl. Sec. Comm'r Dec.2d 465 (1978);  *In re Carpenter*, Empl. Sec. Comm'r Dec.2d 176 (1976), *In re Verna*, Empl. Sec. Comm'r Dec.2d 617 (1980);  *In re Ash*, Empl. Sec. Comm'r Dec.2d 401, (1978); *In re Ostrom*, Empl. Sec. Comm'r Dec.2d 204 (1976).  The elements of the applicable statutes and regulations must be proven by a preponderance of evidence for misconduct to be found.  A "preponderance of the evidence" is that evidence which, when fairly considered, produces the stronger impression, has the greater weight, and is the more convincing as to its truth when weighed against the evidence in opposition thereto. WAC 192-100-065; *Yamamoto v. Puget Sound Lumber. Co.*, 84 Wash. 411, 146 Pac. 861 (1915).

9. Here, although the claimant's behavior violated those standards of behavior that the employer expected of him, because the claimant was never told about the employer's expectations regarding work-related conduct and was never provided with any written rules or policies which described employer's expectations of employees, and because the claimant never received any verbal or written warnings before he was discharged, misconduct as defined by RCW 50.04.294 has not been established.

10. Because misconduct as defined by RCW 50.04.294 has not been established, the claimant is not disqualified from receiving benefits pursuant to RCW 50.20.066.

11. This decision does not question the wisdom of the employer in discharging the claimant, but I conclude that the evidence does not meet the legal standard of misconduct.

12. Accordingly, the September 15, 2015 Determination Notice that denied benefits will be reversed to reflect that from the week beginning August 2, 2015 through the week ending October 17, 2015, the claimant was able to work, available for work, and he

actively sought work as required by RCW 50.20.010(1)(c), that the claimant was not discharged for misconduct as defined by RCW 50.04.294 and is not disqualified from receiving benefits pursuant to RCW 50.20.066.

**Now, therefore, it is ORDERED:**

The determination of the Employment Security Department under appeal is **REVERSED**.

From the week beginning August 2, 2015 through the week ending October 17, 2015, the claimant was able to work, available for work, and he actively sought work as required by RCW 50.20.010(1)(c).

The claimant was not discharged for misconduct as defined by RCW 50.04.294 and is not disqualified from receiving benefits pursuant to RCW 50.20.066.

**Employer:** If you are a base year employer for this claimant, or become one in the future, your experience rating account will be charged for any benefits paid on this claim or future claims based on past wages you paid to this individual. If you are a local government or reimbursable employer, you will be directly liable for any benefits paid. Benefit charges or liability will accrue unless this decision is set aside on appeal. See RCW 50.29.021. If you pay taxes on your payroll, any charges for this claim could be used to calculate your future tax rates.

**Notice to Claimant:** Your former employer has the right to appeal this decision. If this decision is reversed because it is found you committed misconduct connected with your work, all benefits paid as a result of this decision will be an overpayment. State law says you will not be eligible for waiver of the overpayment, nor can the department accept an offer of compromise (repayment of less than the total amount paid to you). The benefits must be repaid even if the overpayment was not your fault. See RCW 50.20.066(5).

Dated and mailed October 22, 2015 from Spokane Valley, Washington.

*Mary Ellen Goodwin*

Mary Ellen Goodwin
Administrative Law Judge
Office of Administrative Hearings

**Certificate of Service**

I certify that I mailed a copy of this order to each party at the address listed below, postage prepaid, on the date stated above.

Melissa Paul
Delivery Specialist

Mailed to:

WILLIAM MCVEIGH                         Claimant
APT 131
5415 S ORCHARD ST
UNIVERSITY PL, WA  98467-3634

J W BROWER HEATING &                   Employer
AIR CONDITIONING
CLIMATE CHANGERS INC
3424 SOUTH TACOMA
TACOMA, WA  98409-4729

**YOU HAVE THE RIGHT TO APPEAL**

This decision becomes final unless a Petition for Review is mailed to the address below. If you disagree with the administrative law judge's order, you may file a Petition for Review stating the reasons why you disagree.  Include the docket number on your Petition for Review.  Do not write more than five (5) pages.  You may use the form on the following page to file your Petition for Review.

Submit your Petition for Review to:

> **Commissioner's Review Office**
> **Employment Security Department**
> **P.O. Box 9555**
> **Olympia, Washington  98507-9555**

Your Petition for Review must be postmarked on or before **November 23, 2015.**

Do not file your Petition for Review by facsimile (fax).

9497

23 oct 15

10/23

Fri, Oct 23, 9:12 AM

What grievance?

Your story is not correct Bill!

Did you do what I asked you to do?

No bill that's not what I am talking about. Quit trying to mix things up. You sent me your check stubs once on October 6th, the day after you first told me about it. You need to quit playing games. You started the texting, not me.

Send

**Best scanned image available.**

94-97

23 0cT
/5



of you

If you still don't know what I'm referring to then your comment to me 'I get it' doesn't mean what I thought. I get it

I can send my issues forward. Being Union strong should mean the same thing to all of the workers in the local 66. Thanks for the reply

If you are referring to me sending you my pay info that was owed to me for the second time then yes. I'm not arguing with you over text messages. You know what I've been talking about. Now I'm left without some very important eyewitness testimony for moving forward.

Text Message                    Send

Best scanned image available.

94-97

2ɔ oc,
15



Messages (2)  **Jeff Stowe**   Details

be getting fired.  You were
made aware of my problem
the day it happened.  I've
pushed information your way
throughout.  With no
response from you at critical
points the fair representation
the local 66 owes me was not
being supplied by you and I
had to jump through hoops to
get last minute help.  This all
leaves me with questions
about how far you have gone
with anything that I've asked
of you

If you still don't know what
I'm referring to then your
comment to me 'I get it'
doesn't mean what I thought.
I get it

I can send my issues forward.
Being Union strong should
mean the same thing to all of
the workers in the local 66.

Text Message            Send

Best scanned image available.

94-97

23 Oct / 5



Best scanned image available.

# verizon✓

## Detail for William McVeigh: 253–255–1921

Best scanned image available.

## Voice, continued

| | | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 34 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Peoria AZ | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Incoming CL | 26 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 11 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Tacoma WA | 36 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 5 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 36 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Seattle WA | 5 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| 10/23 | 9:53A   425–493–8900 | Peak | PlanAllow | Tacoma WA | Everett WA | 13 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Toll–Free CL | 3 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Olympia WA | 2 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Bellevue WA | 2 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 6 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Vashon WA | Seattle WA | 1 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 5 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Bellevue WA | 5 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Seattle WA | 2 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | Off–Peak | N&W | Tacoma WA | Tacomawvly WA | 4 | --- | --- | --- |
| 10/26 | 6:24A   425–922–3445 | Peak | M2MAllow | Tacoma WA | Incoming CL | 32 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Tacomawvly WA | 4 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 1 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Incoming CL | 7 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Seattle WA | 1 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Tacoma WA | 1 | --- | --- | --- |
| 10/26 | 1:56P   206–467–6700 | Peak | PlanAllow | Tacoma WA | Incoming CL | 3 | --- | --- | --- |
| | | Peak | M2MAllow | Tacoma WA | Incoming CL | 2 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Reno NV | 3 | --- | --- | --- |
| | | Peak | PlanAllow | Tacoma WA | Vashon WA | 8 | --- | --- | --- |

102

11/4/2015                          Outlook.com Print Message

Print                                                                                        Close

# Missing Time

From:   **Jeff Stowe** (JeffS@smw66.org)
Sent:   Tue 10/27/15 1:07 PM
To:     Bill McVeigh (bill.mcveigh@live.com)
Cc:     marlene@jwbrower.net


Bill,


In researching your claim for missing time with JW Brower, they did not receive a time card from you for work on the 3rd of August, that coupled with the fact that you had requested the 31st of July off for a long weekend they had assumed that you were off on the 3rd of August as well.  Marlene researched further into the companies work logs and did come up with the fact that you did work on the 3rd even though a time card was not submitted.


J W Brower will be sending you a check for the 9.15 missing hours of work, they will also be remitting the same towards your benefit package. In addition, they will be mailing you a copy of your termination slip that you requested.


*Jeffrey W. Stowe*
**Business Representative**

**Sheet Metal Workers Local 66**
*2725 Williamson Place Suite 101*
*DuPont WA 98327*

*253-219-1644 (Cell)*

*253-617-7909 (Office)*
*253-964-1020 (Fax)*
jeffs@smw66.org
*Please visit our website:*
http://www.smw66.org

# 31 July

$10^3$

From: **William McVeigh** (bill.mcveigh@live.com)
Sent: Tue 10/27/15 6:50 PM
To: Jeff Stowe (JeffS@smw66.org)

I was actually leaving for my annual family camping trip and wasn't allowed the 3rd off but was called in for the morning of the 31st for 3 hours to make phone calls and go over paperwork which I never put down as time to be paid for. But I do remember that one of the pressing issues was tracking down thru johnstone the who what why when of some equipment that was charged to the brower account by either Ross or Cal I don't remember exactly who. Marlene and Chris should remember if not they can check the name that's written on the box out in shop. I think it was purchased back in 2014 by one of the brothers on their own dime. I could be mistaken.

On the third I went to Lenord haffert mellinger fallenbay and the rest of the time was in the shop and the fourth I was in the shop and office most of the day except for Lenord which I remember Marlene and I bet pizza lunch that I couldn't get it done and be back by 1230 or 1245 and then later that evening I went to mr winters. I'm sure Marlene wouldn't forget our friendly pizza wager. It was the day that Nates daughter kept coming into the production area asking me if I needed help with anything. And if you don't mind make sure that Marlene is aware that I didn't ask to get paid for the time I took to finish off the Charles wright bid for her the evening of the fifth at home and then delivered to her on the sixth .

Thanks

Sent from my iPhone



105
112

**Best scanned image available.**

From: **Email** bill.mcveigh@live.com
Subject: Re: Missing Time
Date: Today at 11:59 AM
To: Jeff Stowe JeffS@smw66.org

I have received almost all of my final pay check but am still waiting on all of it. I am still waiting for the rest. I was paid 9 hour and 9 minutes of pay on the last supplemental final pay check. I sent you my hours. A total of 26 and 3/4 hours of regular pay and 1 and 1/4 of over time. That makes a total of 28.625 hours. 17.42 hours already paid. That leaves 11.20000 hours owed I received a post marked letter 30 October 2015 with 9.150000 hours in it leaving 2.05000 hours still owed. I still want to get my full final paycheck. Once I do I will record the day so I can have you calculate hoe much Jw brower owes me as per article 19 in the collective bargaining agreement. Today makes 444 hours of pay and benefits owed me plus whatever else is needed to make me whole in every way. Thanks

On Oct 27, 2015, at 7:22 PM, William McVeigh <bill.mcveigh@live.com> wrote:

Thanks Jeff
The time missing in my point of view was the 4th of August it included over time at mr winters house that evening
I had emailed you my times back on the 19th of August when you first requested my work hours

Sent from my iPhone

On Oct 27, 2015, at 2:07 PM, Jeff Stowe <JeffS@smw66.org> wrote: **scanned image available.**

Bill,

In researching your claim for missing time with JW Brower, they did not receive a time card from you for work on the 3rd of August, that coupled with the fact that you had requested the 31st of July off for a long weekend they had assumed that you were off on the 3rd of August as well. Marlene researched further into the companies work logs and did come up with the fact that you did work on the 3rd even though a time card was not submitted.

J W Brower will be sending you a check for the 9.15 missing hours of work, they will also be remitting the same towards your benefit package. In addition, they will be mailing you a copy of your termination slip that you requested.

*Jeffrey W. Stowe*
*Business Representative*

$106 \sim 110$

## TERMINATION SLIP

SMACNA

Sheet Metal and
Air Conditioning Contractors
of Western Washington

Name William McVeigh

Date 10/29

Address 5415 S. Orchard St. Apt 131 UP WA

Last 4 SSN 1677

Craft - Sheet Metal

98467

**Reason for Termination:**
☐ Lack of Work          ☐ Low Production          ☐ Absenteeism
☐ Not Qualified         ☐ Quit                   ☐ Insubordination

Comments Misconduct

Authorized by _____    Employee Signature

Title _____    Employer Matthew Neuwert 10/28/2015

White - Union  Yellow - Employer  Pink - Employee
E-Mail/Mail to: info@smw65.org  11811 Beverly Park Rd., B-2, Everett, WA 98204-3806

TACOMA WA 985
OLYMPIA WA
29 OCT 2015 PM 3 1

William McVeigh
5415 S. Orchard St.
Apt 131 University Place
WA 98467

J.W. BROWER
3424 South Tacoma Way
Tacoma WA 98409
253-474-3731

98467735 3415

# Re: Unlawful termination

From: **William McVeigh** (bill.mcveigh@live.com)
Sent: Fri 10/30/15 9:26 AM
To:   Jeff Stowe (JeffS@smw66.org)


Once again agency deadlines are coming up and I have to get moving on this. Procrastination is not a excuse to give a federal agency for why o missed a deadline so your timeliness in a response that answers my previous questions would be nice. Your response of answering my questions with a question doesn't help my position. If you do have questions please make a list of them and email them to me. I will strive to answer as swiftly as possible. The questions I needed a answer to are on this thread.

Sent from my iPhone

> On Oct 30, 2015, at 10:14 AM, William McVeigh <bill.mcveigh@live.com> wrote:
>
> Although goes without saying, not following termination procedures as laid out in a contract for starters.. After 3 months without my termination notice and not getting my final pay check in full violates the contract which entitles me to some sort of financial compensation. No notice, illegitimate grounds, malice, fraud, retaliation, to name a few, coupled with numerous violations of the criminal code of Washington warrant at least a grievance . I don't act on bad faith and lie, without relevant and factual information Brad was able to use just the statements that alledged my misconduct that the state Received from Jw brower to prove I wasn't engaging in any misconduct by state definition and "sexual harassment" wasn't ever alleged to the state definitely implied though is unlawful but very unethical. I know very little about my state's legal reasons but that little bit will be plenty to get started. This is scratching the surface. I'm certain that I'm not the only union member that has ever complained about the devious practices of my previous employer. Although irrelevant in a unlawful termination it would give a third party way of looking at my position.
>
>
>
>> On Oct 29, 2015, at 11:42 AM, Jeff Stowe <JeffS@smw66.org> wrote:
>>
>> What makes you fell that your termination from JW Brower was unlawful?
>>
>> Jeffrey W. Stowe
>> Business Representative



3424 South Tacoma Way
Tacoma WA 98409
J.W. Brower

William McVeigh
5415 South Orchard St.
Apt 131
University Place WA 98467

**J. W. BROWER**
HEATING & AIR CONDITIONING
3424 SOUTH TACOMA WAY
TACOMA, WA 98409-4729
(253) 474-3731

NUMBER

98-7083
3251

PAYROLL
CHECK

19845

10/27/15

Dollars $ 243.61

THE SUM 243 DOLS 61

PAY TO THE ORDER OF

William McVeigh

Marlene A Nevil

Heritage Bank    55th and S. Tacoma Way Office 253-472-3333
1402 S. Tacoma Way, Tacoma, WA 98409
Access Line 888-505-9150   www.HeritageBankWA.com

>>
>> Sheet Metal Workers Local 66
>> 2725 Williamson Place Suite 101
>> DuPont WA 98327
>>
>> 253-219-1644 (Cell)
>> 253-617-7909 (Office)
>> 253-964-1020 (Fax)
>> jeffs@smw66.org
>> Please visit our website:
>> http://www.smw66.org
>>
>>
>>
>> CONFIDENTIAL COMMUNICATION - This communication constitutes an
>> electronic communication within the meaning of the Electronic
>> Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure
>> is strictly limited to the recipient intended by the sender. This
>> communication and any files transmitted with it are confidential and
>> intended solely for the use of the individual or entity to whom they are
>> addressed. If you are not the intended recipient, any disclosure,
>> copying, distribution, or use of any of the contents of the
>> communication and/or transmitted files is STRICTLY PROHIBITED. If you
>> have received this message in error, please notify the sender
>> immediately and destroy the original transmission and all copies.
>> Please note that any views or opinions presented in this email or solely
>> those of the author and do not necessarily represent those of Sheet
>> Metal Workers Local 66. If you have properly received this
>> communication, do not disclose or otherwise distribute it or its
>> contents except to authorized individuals. Finally, the recipient
>> should check this email and any attachments for the presence of viruses.
>> Local 66 accepts no liability for any damage caused by any virus
>> transmitted by this communication and/or transmitted files.
>>
>>
>> -----Original Message-----
>> From: William McVeigh [mailto:bill.mcveigh@live.com]
>> Sent: Wednesday, October 28, 2015 10:28 AM
>> To: Jeff Stowe
>> Subject: Unlawful termination
>>
>> Do I need to go thru local 66 to file with the NLRB or the EEOC ? Or
>> does the union even deal with that? There are dead lines with both

>> that are coming up. I would also like a copy of whatever documentation
>> given to you or the local 66's legal division in regards to the reasons
>> of my termination. I was told the inquiry was sent out early August. I
>> have only been verbally informed. Thanks
>>
>>
>> Sent from my iPhone

From: **Email** bill.mcveigh@live.com
Subject: **Fwd: Unlawful termination**
Date: **Yesterday at 12:18 PM**
To: timc@smw66.org

Sent from my iPhone

Begin forwarded message:

From: William McVeigh <bill.mcveigh@live.com>
Date: November 5, 2015 at 12:12:36 PM PST
To: Jeff Stowe <JeffS@smw66.org>
Subject: Re: Unlawful termination

I'm sending you a picture of my termination slip. It shows no reason for termination and only comments are written are misconduct. The definition of misconduct is defined in the Rcw title 50. I did not conduct myself that way at all. I demand to move forward with a unlawful termination suit and demand to be made whole in every way. Bill McVeigh

Sent from my iPhone

On Oct 30, 2015, at 10:26 AM, William McVeigh <bill.mcveigh@live.com> wrote:

Once again agency deadlines are coming up and I have to get moving on this. Procrastination is not a excuse to give a federal agency for why o missed a deadline so your timeliness in a response that answers my previous questions would be nice. Your response of answering my questions with a question doesn't help my position. If you do have questions please make a list of them and email them to me. I will strive to answer as swiftly as possible. The questions I needed a answer to are on this thread.

Sent from my iPhone

On Oct 30, 2015, at 10:14 AM, William McVeigh <bill.mcveigh@live.com> wrote:

Although goes without saying, not following termination procedures as laid out in a contract for starters.. After 3 months without my termination notice and not getting my final pay check in full violates the contract which entitles me to some sort of financial compensation. No notice, illegitimate grounds, malice, fraud, retaliation, to name a few, coupled with numerous violations of the criminal code of Washington warrant at least a grievance . I don't act on bad

faith and lie, without relevant and factual information  Brad was able to use just the

Jacob H. Black
Kristina Detwiler
Daniel Hutzenbiler
SaNni M-K Lemonidis

2101 Fourth Avenue
Suite 1000
Seattle, Washington 98121-2317
206.467.6700 · 1.800.548.7959
206.467.7589 facsimile

Bradley Medlin
Andy Lukes
Aurora Wilson
Sam Leonard
Margaret Burnham

November 5, 2015

William McVeigh
5415 S. Orchard St., Apt. 131
University Place, Washington 98467-3634

Our File No. 3262-052

Dear Mr. McVeigh:

I am writing regarding your recent termination from J.R. Brower. Jeff Stowe, Local 66's Business Representative, investigated the facts surrounding your termination. As you are aware, Local 66 assisted you in insuring that you received your unemployment. In addition, Mr. Stowe has ensured that you received the pay owed to you by Brower. At this point, the Local considers this matter closed.

In addition, I understand that you may have implicitly threatened some kind of action against Mr. Stowe. Please know that Local 66 takes such matters very seriously, and any threats against its agents will be reported to the proper authorities.

Sincerely,

Daniel Hutzenbiler

DH:bb

cc:   Jeff Stowe
      Tim Carter



Best scanned image available.



**STATE OF WASHINGTON**

DEPARTMENT OF LABOR AND INDUSTRIES
EMPLOYMENT STANDARDS PROGRAM
Wage Release – Complaint No. 99976

1. I, William McVeigh, accept a payment in the amount of $50.65 from J W Brower Heating and Air Conditioning.
2. In exchange for this payment, I release J W Brower Heating and Air Conditioning from all my claims for unpaid wages for the time period of 8/4/2015 to 8/4/2015 that were included in L&I's investigation of my wage complaint. This specific amount is owed to me because of the L&I findings checked below.

| Type of claim filed by employee | | | | | |
|---|---|---|---|---|---|
| ☐ | Did not receive final pay check | ☐ | Unauthorized or unlawful deductions | ☐ | Unpaid travel time |
| ☐ | Received NSF (bad) or Account-Closed check | ☐ | Hours worked but not paid | ✔ | Unpaid bonus |
| ☐ | Unpaid minimum wage | ☐ | Unpaid agreed wages | ☐ | Other.  (Explain below.) |
| ☐ | Unpaid overtime | ☐ | Unpaid commissions | | |

3. I understand that L&I found that wages owing in the amount of $56.49 is the same amount that I claimed for the time period of 8/4/2015 to 8/4/2015.
4. I release J W Brower Heating and Air Conditioning only for the reason(s) and the time period listed above.  I do not intend to release or waive any other claims I may have against J W Brower Heating and Air Conditioning.
5. I understand I have the right to consult an attorney if I have any questions before I sign this document.

Signature: _____    Date Signed: _____

Address: _____
City, State, Zip Code:                                          Social Security Number: _____

_____              Phone Number:  (_____)_____

*NOTICE:  THIS SECTION TO BE USED ONLY WHEN WORKER MAILS THIS FORM BACK TO L&I.*
*NOTARY*
*Subscribed and sworn to before me, this_____ day of _____, 20_____*

_____
*NOTARY PUBLIC in and for the State of Washington*

*Residing at* _____

*My commission expires* _____

**For Department Use Only:**

Date check received at L&I: 11/23/15            Employer Check #: 19858
Gross wage amount: $56.49
Less itemized deductions in total:                Net wage amount: $50.65

Released by L&I Representative:

_____            Date: _____

ES-10-1  12-08      **SAVE THIS LETTER AND OTHER L&I LETTERS FOR YOUR RECORDS**

# WAGE TRANSCRIPTION SHEET

Employee Name: **McVeigh, William**

Employer/Company: **J W Bower**

Complaint #: **99976**

| | Week Ending Date | Sun | Mon | Tues | Wed | Thur | Fri | Sat | Total Hrs. Wrkd | Regular Hours | Reg. Hrly Rate | Amt owed Rg. Hrs | OT Hrs | OT rate (1.5 times) | Amt owed OT hrs | Tot. Wgs owed (d+g) | Tot. Wgs Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2-Aug | 3-Aug | 4-Aug | 5-Aug | 6-Aug | 7-Aug | 8-Aug | | | | | | | | | |
| 1 | 8/8/2015 | | 9.15 | 11.00 | 8.15 | | | | 28.3 | 28.3 | $32.59 | $922.30 | | $48.89 | | $922.30 | |
| 2 | 8/15/2015 | 9-Aug | 10-Aug | 11-Aug | 12-Aug | 13-Aug | 14-Aug | 15-Aug | | | $32.59 | | | $48.89 | | | |
| 3 | 8/22/2015 | 16-Aug | 17-Aug | 18-Aug | 19-Aug | 20-Aug | 21-Aug | 22-Aug | | | $32.59 | | | $48.89 | | | $565.81 |
| 4 | 8/29/2015 | 23-Aug | 24-Aug | 25-Aug | 26-Aug | 27-Aug | 28-Aug | 29-Aug | | | $32.59 | | | $48.89 | | | |
| 5 | 9/5/2015 | 30-Aug | 31-Aug | 1-Sep | 2-Sep | 3-Sep | 4-Sep | 5-Sep | | | $32.59 | | | $48.89 | | | |
| 6 | 9/12/2015 | 6-Sep | 7-Sep | 8-Sep | 9-Sep | 10-Sep | 11-Sep | 12-Sep | | | $32.59 | | | $48.89 | | | |
| 7 | 9/19/2015 | 13-Sep | 14-Sep | 15-Sep | 16-Sep | 17-Sep | 18-Sep | 19-Sep | | | $32.59 | | | $48.89 | | | |
| 8 | 9/26/2015 | 20-Sep | 21-Sep | 22-Sep | 23-Sep | 24-Sep | 25-Sep | 26-Sep | | | $32.59 | | | $48.89 | | | |
| 9 | 10/3/2015 | 27-Sep | 28-Sep | 29-Sep | 30-Sep | 1-Oct | 2-Oct | 3-Oct | | | $32.59 | | | $48.89 | | | |
| 10 | 10/10/2015 | 4-Oct | 5-Oct | 6-Oct | 7-Oct | 8-Oct | 9-Oct | 10-Oct | | | $32.59 | | | $48.89 | | | |
| 11 | 10/17/2015 | 11-Oct | 12-Oct | 13-Oct | 14-Oct | 15-Oct | 16-Oct | 17-Oct | | | $32.59 | | | $48.89 | | | |
| 12 | 10/24/2015 | 18-Oct | 19-Oct | 20-Oct | 21-Oct | 22-Oct | 23-Oct | 24-Oct | | | $32.59 | | | $48.89 | | | |
| 13 | 10/31/2015 | 25-Oct | 26-Oct | 27-Oct | 28-Oct | 29-Oct | 30-Oct | 31-Oct | | | $32.59 | | | $48.89 | | | |
| 14 | 11/7/2015 | 1-Nov | 2-Nov | 3-Nov | 4-Nov | 5-Nov | 6-Nov | 7-Nov | | | | | | | | | |
| | **Total Hrs** | | | | | | | | 28.3 | 28.3 | | | | | | | |

| Total owed this page= | $922.30 | **Total Paid** |
|---|---|---|
| Balance owed= | $56.49 | $865.81 |

114

UNITED STATES POSTAGE
$ 00.48⁵
02 1M
0004286617      NOV 25 2015
MAILED FROM ZIP CODE 98501

FIRST CLASS

State of Washington
DEPARTMENT OF LABOR AND INDUSTRIES
950 Broadway Suite 200
Tacoma WA 98402-4453
F208-004-000

98467363634  C081

BY CERTIFIED MAIL

November 10, 2015
Mark Nelson, President
Sheet Metal Workers Union Local 66
11831 Beverly Park Rd B-2
Everett, WA  98204



Dear President Nelson,

I have worked at JW Brower as a HVAC service technician, have been a member of Local  66 for 7 months, and have been in the industry for over 20 years.

Without any investigation, I was terminated from my employment by Christine Saunders, a sub contracted computer analyst, on 5 August, 2015.  The reason given to me was "sexual harassment" .  I asked several times about what I did to warrant my termination.  No explanation or termination slip was given.  On 5 August, 2015, I called my Union Representative, Jeff Stowe, to inform him of my termination and the events surrounding it, which included 2 instances of harassment by an fellow Union member and employee, Nate Hicks.  The first I reported to the Owner of JW Brower, Marlene Harnish.  The second was committed in the presence of Marlene Harnish.  At that time I asked for a termination slip along with an explanation.  On 19 August, 2015 I received  a mailed check that was going to be my final pay.  The amount was short over 10 hours and I asked Jeff Stowe get me the remainder owed to me.  On 21 August, 2015 I made Jeff Stowe aware that the Employment Security Department may deny my unemployment benefits and that I needed legal help.  The Employment Security Department denied my benefits due to the alleged misconduct.  By 6 October, 2015 I had made 17 phone calls, 10 emails, and several texts inquiring about my termination to Jeff Stowe and a attorney he said would help, Dan Hutzenbiler.  On 6 October, 2015 after I called, Dan Hutzenbiler returned my call with the reasons, provided to him by JW Brower, for my termination.  On 6 October, 2015 I asked Jeff Stowe about my final paycheck again. After attempting to contact Jeff Stowe and Dan Hutzenbiler several more times, I did not receive any legal help.  On October 16, 2015 after I attempted to subpoena witnesses for my hearing and getting denied by the Administrative Law Judge for being untimely, I called the Main office in Everett to get help.  On 22 October, 2015 Bradley Medlin, a attorney that works for Dan Hutzenbiler, represented me for the Administrative hearing.  During the  telephone hearing I had no witnesses, besides myself, that could provided direct testimony against the 3 witnesses provided by JW Brower and the perjurious statements made.  The Administrative Law Judge found that I did not commit misconduct as defined by the Law. On 22 October, 2015, after asking for legal guidance about my termination, Bradley Medlin let me know that all other inquiries, other than my unemployment, needed to be addressed to Jeff Stowe. On 23 October, 2015 I called the Main office in Everett after Jeff Stowe lied to me and accused me of trying to mix things up.  On 27 October, 2015 Jeff Stowe emailed me the hours JW Brower was sending me for my final pay.  The hours calculated were incorrect and I explained to Jeff Stowe the reasons.  I complained about my rights being violated and the collective bargaining agreement being broken.  On 7 November, 2015, after a few more correspondences, I received a letter, regarding my termination, from Robblee Detwiler & Black, that reads " I understand that you may have implicitly threatened some kind of action against Mr. Stowe", that threats "will be reported to the proper authorities", and "Mr. Stowe has ensured that you received the pay owed to you by Brower.  At this point, the Local 66 considers this matter closed."

As of 7 November, 2015 I am aware of the following:  I have not received my correct final pay.  I have not received a completed termination slip. I have not received the documented reasons given to the Local 66 for my termination that I have repeatedly asked for.  It is my understanding that no grievance has been started.  It is my understanding that I have the right to fair representation, the right to work in a safe workplace, the right not to be harassed, and the right to not be retaliated or discriminated against.  The collective bargaining agreement has been violated along with all other relevant rules and regulations.

I ask you to file a grievance on my behalf to fight against all the unethical and unlawful actions or inactions that have befallen me since 22 July, 2015.  I should be made whole in every way.

Please inform me in writing by November 20, 2015 if the Union will file a grievance on my behalf.

Thank you for your cooperation

Sincerely,
William McVeigh
5415 South Orchard Street #131
University Place, WA 98467
(253)255-1921



**WILLIAM MCVEIGH**

5415 SOUTH ORCHARD #131
UNIVERSITY PLACE, WA 93467

▶ **MARLENE HARNISH**

3424 SOUTH TACOMA WAY
TACOMA, WA 98409

4 FEBRUARY, 2016

----------------------------------------------------------------

## THIS IS REQUEST FOR CORRECTION OR CLARIFICATION

Dear Marlene,

On the 5th of August, 2015, I was terminated from your company, JW Brower, for the reason of "sexual harassment". From speaking, with the local 66, I was told that they were given, upon request, a list of reasons that seem to come from one statement from Nate Hicks dated the 13th of August, 2015, which I have read. If you take the time to confirm this statement's validity you will find it to be false, fabricated, and deceptive, which makes the assumptions and statements made about me become the same. With statements and accusations like these in any file that has my name on it, it reflects badly on my otherwise excellent reputation. The audio recording of you and Mr. Hicks lying under oath to a judge on the 22nd of October, 2015, are the other verbal statements that are incorrect and hurt my reputation. I did not sexually harass anyone, as you well know, and did not commit any form of misconduct confirmed by a judge in court.

I request that you, in writing, correct all verbal statements and documents you have said, written, endorsed, or implied, as to my character to the local 66, the Office of Administrative Hearings, and the Employment Security Department. Without you doing this, my name will remain unrightfully tarnished, which creates a giant hurdle getting employment, which in turn keeps my financial stability going backwards. Your timely cooperation to my request would also avoid any sort of litigation that would take a toll on my finances And bring to a end all the undo confusion and heartache that this has caused my family, the people closest to me, and my loved ones.


Sincerely William McVeigh

INTERNET
FORM NLRB-508
(2-08)

FORM EXEMPT UNDER 44 U.S.C. 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST LABOR ORGANIZATION
OR ITS AGENTS**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

INSTRUCTIONS: File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

**1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

| a. Name | b. Union Representative to contact | |
|---|---|---|
| SHEET METAL WORKERS LOCAL 66 | TIM CARTER | |
| | Title: BUSINESS MANAGER | |

| c. Address (Street, city, state, and ZIP code) | d. Tel. No. (425) 493-5900 | e. Cell No. |
|---|---|---|
| 11831 BEVERLY PARK ROAD, B-2 EVERETT WA 98204 | f. Fax No. | g. e-Mail |

h. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (list subsections) (1)(A), (2), (3) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

**(1) Within the previous six months, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act by threatening to retaliate against employees if they did not join or support the union.   (2) Within the previous six months, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act by refusing to process the Charging Party's grievance for arbitrary or discriminatory reasons or in bad faith.   (3) Within the previous six months, the above-named labor organization has restrained and coerced employees in the exercise of rights protected by Section 7 of the Act  by operating a hiring hall in a manner that was arbitrary, discriminatory or in bad faith.   (4) Within the previous six months, the above-named labor organization has  failed and refused to bargain in good faith with the employer.**

| 3. Name of Employer | 4a. Tel. No. (253) 474-3731 | b. Cell No. |
|---|---|---|
| JW BROWER | c. Fax No. | d. e-Mail |

| 5. Location of plant involved (street, city, state and ZIP code) | 6. Employer representative to contact |
|---|---|
| 3424 SOUTH TACOMA WAY TACOMA WA 98409 | MARLENE HARNISH Title: OWNER |

| 7. Type of establishment (factory, mine, wholesaler, etc.) | 8. Identify principal product or service | 9. Number of workers employed |
|---|---|---|
| Services | HVAC | 5 |

| 10. Full name of party filing charge | 11a. Tel. No. (253) 255-1921 | b. Cell No. (253) 255-1921 |
|---|---|---|
| WILLIAM LUCAS MCVEIGH | c. Fax No. | d. e-Mail bill.mcveigh@live.com |

| 11. Address of party filing charge (street, city, state and ZIP code) | | |
|---|---|---|
| 5415 SOUTH ORCHARD STREET #131 UNIVERSITY PLACE WA 98467 | | |

**12. DECLARATION**

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

| By  WILLIAM LUCAS MCVEIGH          WILLIAM LUCAS MCVEIGH | Tel. No. (253) 255-1921 |
|---|---|
| (signature of representative or person making charge)    (Print/type name and title or office, if any) Title: | Cell No. (253) 255-1921 |
| | Fax No. |
| Address  5415 SOUTH ORCHARD STREET #131 UNIVERSITY PLACE WA 98467                    (date) 02/1/2016 17:45:11 | e-Mail bill.mcveigh@live.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## Additional Information in Support of Charge

**Charging Party Name :** WILLIAM LUCAS MCVEIGH
**Inquiry Number :** 1-1583180851
**Date Submitted :** 02/1/2016 17:45:11

Please provide a brief description of the specific conduct involved, the dates of the conduct, and the person(s) responsible for the conduct. For example, if you are filing a charge alleging an unlawful discharge, please include the date of the discharge and the individual(s) discharged. If you are claiming that the employer failed to provide information to the union, please include the date of request, the name and title of person to whom request was submitted, and a general description of information that was requested but not provided. If you are claiming that the union has failed to represent you in a grievance matter, please include the nature of the grievance.

The information you provide may be viewed by the charged party in the event of a formal proceeding, so PLEASE DO NOT GIVE A DETAILED ACCOUNT OF YOUR CHARGE OR A LIST OF POTENTIAL WITNESSES AT THIS TIME. A Board Agent will contact you to obtain this and other detailed information after your charge is docketed.

After you submit this E-Filed Charge form, you will receive a confirmation email with an Inquiry Number (Sample Inquiry Number: 1-1234567890) and a link to the E-Filing web page. You may use the link and the Inquiry number provided in the email to e-file any additional documents you wish to present in support of your charge.

## Additional Information Provided:

I WAS UNLAWFULLY DISCHARGED ON 5 AUGUST, 2015 WITH NO INVESTIGATION, TERMINATION SLIP, OR FINAL PAY. MY UNION REPRESENTATIVE TOLD ME THE UNION WOULD HELP. AFTER MANY EMAILS, TEXTS, PHONE CALLS, AND DECEPTIONS I GOT A THREATENING LETTER FROM MY UNION SAYING IT WAS CLOSED. I HAVE NOT RECEIVED MY FINAL PAY (CONFIRMED BY L&I) OR A TERMINATION SLIP WITH THE REASONS FOR MY DISCHARGE. I'M AFRAID TO INQUIRE ANY FURTHER DUE TO THE UNION'S LETTER STATING THAT I CAN BE REPORTED TO THE AUTHORITIES.