UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM L. MCVEIGH,<br><br>               Plaintiff,<br><br>    v.<br><br>CLIMATE CHANGERS, INC. d/b/a J.W. BROWER HEATING AND AIR CONDITIONING, INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL, and TRANSPORTATION WORKERS, LOCAL 66, MARLENE HARNISH<br><br>               Defendants. | CASE NO. 16-5174 RJB<br><br>ORDER ON DEFENDANT INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL 66'S MOTION TO DISMISS CLAIMS |

This matter comes before the Court on Defendant International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local 66's ("Local 66") Motion to Dismiss Claims (Dkt. 53) and Plaintiff's August 5, 2016 pleading entitled "Third Amended Complaint as a Matter of Course" (Dkt. 56). The Court has considered the pleadings filed in support of and in opposition to the motion, Plaintiffs August 5, 2016 pleading, and the file herein.

On March 4, 2016, Plaintiff, *pro se*, filed this civil action, pursuant to "the Labor Management Relations Act 29 U.S.C. § 185" ("LMRA") and state law, asserting claims against Local 66 and his former employer in connection with the termination of his employment for misconduct and/or sexual harassment. Dkts. 1-1 and 40. Pursuant to Fed. R. Civ. P. 12(b)(6), Local 66 now moves for dismissal of Plaintiff's state law claims of defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful discharge. Dkt. 53. For the reasons stated below, the motion should be granted as follows: the claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful discharge should be dismissed with prejudice, and the claim for defamation should be dismissed without prejudice, and with leave to amend.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

The following facts are taken from Plaintiff's Second Amended Complaint. Dkt. 40. In his Second Amended Complaint, Plaintiff maintains that he was a member of good standing with Local 66 in 2015. Dkt. 40, at 2. Plaintiff asserts that he was hired by [Climate Changers, Inc. d/b/a J.W. Brower Heating and Air Conditioning ("Brower")] on July 22, 2015 and Brower improperly terminated his employment two weeks later, on August 5, 2015. *Id.*, at 4 and 2.

Plaintiff alleges that Brower and Local 66 were parties to a collective bargaining agreement ("CBA"). *Id.*, at 2. Plaintiff asserts that under the CBA, (1) he was to receive a termination slip stating the reason for his termination which was filled out by the employer; (2) to be dispatched to another job, Plaintiff needed to provide evidence and reasons for his termination; (3) he has the right to appeal procedures of the CBA; (4) Plaintiff was to be paid in full at discharge; (5) Plaintiff was to be paid one and one-half pay for overtime and for hours worked after 7:00 p.m.;

1  and that (6) grievances must be filed within thirty days of the event or "of the first knowledge of
2  the facts." *Id*., at 2-3.

3      Plaintiff is a 44 year old man, and has been a HVAC technician for 20 years. *Id*., at 4.
4  Plaintiff states that on July 22, 2015, Local 66 Representative Jeff Stowe, the union's "business
5  agent," dispatched Plaintiff to Brower for an interview. *Id*., at 4 and 6. Marlene Harnish,
6  Brower's owner, interviewed and hired Plaintiff. *Id*., at 6. Plaintiff alleges that as a business of
7  only eight employees, Brower did not have written material, guidelines, or rules regarding
8  workplace conduct or violence. *Id*. He maintains that Brower relied on state and federal posters
9  for employee guidelines. *Id*. Plaintiff asserts that he did not see the posters. *Id*.

10      Plaintiff states that he was sent out to a job on July 23, 2015 at a "South Clement" house. *Id*.,
11  at 7. He fixed the unit and chatted with a woman in the home. *Id*. When he returned to the
12  office he asserts that he told Owner Harnish that the equipment was in a "very dangerous state
13  and needed replacement." *Id*.

14      Plaintiff maintains that on July 27, 2015, Owner Harnish asked him if he had ever been
15  diagnosed with A.D.D. [Attention Deficit Disorder], and that she was "sure" Plaintiff had it. *Id*.

16      Plaintiff states that he took the day off to go camping on July 31, 2015. *Id*. He alleges that
17  Brower called him into work, and he stayed for three hours. *Id*. According to Plaintiff, he was
18  not paid for this time. *Id*.

19      Plaintiff asserts that on August 5, 2015, around 10:30 a.m., a co-worker, Nate Hicks,
20  threatened him with physical violence at a job site. *Id*., at 7-8. Plaintiff reported the threat to
21  Owner Harnish, and she separated the two. *Id*., at 8. Around 2:15 p.m., Plaintiff asserts that Mr.
22  Hicks entered a meeting and threatened Plaintiff again in front of Owner Harnish. *Id*.

23
24

1    Plaintiff asserts that later that same day, another employee, Christine Saunders, in the

2 presence of Owner Harnish, asked Plaintiff if he knew the definition of sexual harassment. *Id.*

3 Plaintiff states that he "gave an uneducated response." *Id.* Plaintiff states that Ms. Saunders then

4 replied, "It could be as simple as bending over, picking up a screw, putting it on someone's desk,

5 and saying, 'Now you are screwed!'" *Id.* Plaintiff alleges that Ms. Saunders then terminated his

6 employment on the "pretext of sexual harassment." *Id.* Plaintiff asserts that he asked many

7 times "why?" and was told that "we don't have to tell you." *Id.*

8    Plaintiff maintains that he did not get a termination slip when his employment was

9 terminated. *Id.,* at 8. He states that he just received a letter that gave the reason for termination

10 as "misconduct." *Id.*

11   Plaintiff alleges that Brower released documents to Local 66 and the Washington

12 Employment Security Department about him, which alleged that Plaintiff made statements to

13 Brower co-workers, including "I want to eat your cookie," and "[w]hat month was she a Playboy

14 centerfold?" *Id.,* at 9. The documents also purported state that Plaintiff "bragged about getting

15 physically thrown off a property where [Plaintiff] and coworkers had made sexual statements

16 about a teenage daughter," and Plaintiff "used a number of references about customers with

17 alternative lifestyles." *Id.*

18   Plaintiff states that after the termination of his employment, late on August 5, 2015, he

19 contacted Local 66. *Id.,* at 9. Plaintiff was informed a lawyer, Mr. Daniel Hutzenbiler, was

20 looking into it. *Id.* He states that he contacted Representative Stowe a few days later and

21 complained that he did not get his final pay and or overtime. *Id.* Plaintiff asserts that he

22 repeatedly contacted Mr. Hutzenbiler and Representative Stowe about his termination and pay.

23

24   ORDER ON DEFENDANT INTERNATIONAL
     ASSOCIATION OF SHEET METAL, AIR, RAIL
     AND TRANSPORTATION WORKERS, LOCAL
     66'S MOTION TO DISMISS CLAIMS- 4

1  *Id.* He maintains that Local 66 and the lawyers did not provide him documents he requested and
2  delayed responding to his phone calls and emails. *Id.*
3      Plaintiff alleges that on October 6, 2015, Mr. Hutzenbiler informed him about the allegations
4  Brower had made against him. *Id.,* at 10. Plaintiff asserts that he again repeatedly contacted Mr.
5  Hutzenbiler and Representative Stowe about his termination and pay. *Id.* On October 23, 3016,
6  Plaintiff contacted Tim Carter at Local 66, "over [Representative Stowe's] head." *Id.*
7      Plaintiff acknowledges that Local 66 hired counsel for him that represented him at a hearing
8  with the Employment Security Department. *Id.,* at 9. Although Plaintiff asserts that counsel was
9  "reprimanded" by the administrative law judge, Plaintiff ultimately prevailed, and received
10 unemployment benefits. *Id.*
11     On November 5, 2015, Mr. Hutzenbiler sent Plaintiff a letter stating that Local 66
12 investigated his termination, assisted him in getting unemployment, and helped him get any pay
13 owed from Brower. *Id.,* at 11. The letter indicated that Local 66 considered the matter closed.
14 *Id.* It discussed possible threats Plaintiff made against Representative Stowe and notified him
15 that "threats against [Local 66's] agents would be reported to the proper authorities." *Id.*
16     Plaintiff maintains that Local 66 did not grieve the termination of his employment or tell him
17 that such a grievance lacked merit. *Id.*, at 3.
18     Plaintiff asserts that he has "actively sought" employment, but has repeatedly been rejected.
19 *Id.*, at 3.
20     Plaintiff makes claims for (1) breach of contract, (2) "breach of fair duty of representation,"
21 pursuant to sections seven and eight of LMRA; (3) defamation, (4) intentional infliction of
22 emotional distress, (5) negligent infliction of emotional distress, and (6) wrongful discharge. *Id.*
23
24

ORDER ON DEFENDANT INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL
AND TRANSPORTATION WORKERS, LOCAL
66'S MOTION TO DISMISS CLAIMS- 5

1  Plaintiff seeks damages and "[f]or Defendant's [sic] to be rehabilitated with personal,
2  professional, and social deterrence." *Id*.

3  **B.  RELEVANT PROCEDURAL HISTORY AND PENDING MOTIONS**

4  Local 66 now moves to dismiss Plaintiff's Washington state law claim for defamation,
5  intentional infliction of emotional distress, negligent infliction of emotional distress, and
6  wrongful discharge.  Dkt. 53.  It argues the defamation claim should be dismissed because
7  Plaintiff fails to allege any facts which would entitle him to relief.  *Id.*  Local 66 argues that
8  Plaintiff's claims for intentional and negligent infliction of emotional distress should both be
9  dismissed because: (1) the claims are displaced by the claim for breach of the Union's duty of
10 fair representation, (2) the claims are preempted by Section 301 of the LMRA, and (3) Plaintiff
11 fails to plead facts in support of either claim. *Id.*  Local 66 moves for dismissal of Plaintiff's
12 claim for wrongful discharge by arguing that (1) the claim implicates its duty of fair
13 representation and so is preempted, and (2) because Local 66 was not Plaintiff's employer.  *Id.*
14 The motion was noted for consideration on August 12, 2016. *Id.*

15 On August 5, 2016, Plaintiff filed a 46 page pleading entitled "Third Amended
16 Complaint as a Matter of Course" on August 5, 2016.  Dkt. 56.

17 Pursuant to Local Rule W.D. Wash. 7(d)(3), Plaintiff's response to Local 66's Motion to
18 Dismiss, if any, was due on August 8, 2016.  Plaintiff filed a response on August 9, 2016.  Dkt.
19 57.  Even though it was filed late, the response should be considered.

20 In his response, Plaintiff argues that he filed his "Third Amended Complaint to make a
21 more definite statement."  *Id.* at 2.  He indicates that he plans to file further pleadings in
22 connection with the August 5, 2016 "Third Amended Complaint as a Matter of Course."
23 Addressing the motion, Plaintiff, again asserts that Local 66 committed "defamation per se." *Id.*

24 ORDER ON DEFENDANT INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL
AND TRANSPORTATION WORKERS, LOCAL
66'S MOTION TO DISMISS CLAIMS- 6

He asserts that whether his "claims are displaced by the duty of fair representation will depend on if the duty of fair representation . . . was breached." *Id.*, at 4.  He argues that "[w]ith Local 66's failures of its [duty of fair representation] for Plaintiff being brought to light, Local 66 took outrageous measures in order to hurt Plaintiff's credibility and reputation.  If Local 66 would have done its duties owed to Plaintiff, Plaintiff would not be suffering all of the damages from his discharge." *Id.*, at 5.

This opinion will first turn to Plaintiff's August 5, 2016 pleading entitled "Third Amended Complaint as a Matter of Course" and then Local 66's Motion to Dismiss.

## II.     DISCUSSION

### A. PLEADING ENTITLED "THIRD AMENDED COMPLAINT AS A MATTER OF COURSE"

Fed. R. Civ. P. 15(a)(1) permits a party to amend the complaint before being served with a responsive pleading; or within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.  In all other cases, Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Under Local Rule W.D. Wash. 7(d)(3), motions to amend should be noted for consideration for on a date no earlier than the third Friday after the filing and service of the motion.

Responsive pleadings have been filed.  Dkts. 52 and 53.  Contrary to Fed. R. Civ. P. 15(a)(2), the opposing parties did not consent, in writing, to the amendment of Plaintiff's complaint.  Plaintiff did not seek, nor was he granted, leave of court to file his proposed Third Amended Complaint.  This pleading (Dkt. 56) should be stricken.  Further, Plaintiff must follow the rules in regard to attempting to amend his complaint.

ORDER ON DEFENDANT INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL
AND TRANSPORTATION WORKERS, LOCAL
66'S MOTION TO DISMISS CLAIMS- 7

### B. STANDARD ON MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim should be dismissed. *Id*. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

### C. DEFAMATION CLAIM

In Washington, "[a] defamation action consists of four elements: (1) a false statement, (2) publication, (3) fault, and (4) damages." *Duc Tan v. Le*, 177 Wn.2d 649, 662, 300 P.3d 356, 363 (2013).

1    Local 66's motion to dismiss the defamation claim (Dkt. 53) should be granted.

2  Plaintiff's defamation claim asserted against Local 66 should be dismissed without prejudice.

3  Plaintiff has failed to point to a false statement made by Local 66, which it published, and failed

4  to allege that he was caused damage by such a statement.

5    The Court notes that in Plaintiff's pleading entitled "Third Amended Complaint as a Matter

6  of Course" Plaintiff again attempts to make claims against Local 66 for defamation.  Dkt. 56, at

7  38-40.  Plaintiff does not point to false statements made by Local 66, which it published or allege

8  that Plaintiff was caused damage by any statements made by Local 66.

9    The Court, however, cannot yet say that the Plaintiff's defamation claim could not possibly

10  be cured by the allegation of other facts.  Accordingly, Plaintiff should be afforded an

11  opportunity, if he chooses, to amend his Second Amended Complaint to plead sufficient facts to

12  make his defamation claim, on or before August 26, 2016.  Plaintiff should carefully consider the

13  viability of such a claim.

**D.  INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS**

In order to survive a motion to dismiss a Washington claim for intentional infliction of emotional distress, a plaintiff must allege:  "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'"  *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wash.2d 820, 355 P.3d 1100, 1110 (2015) (*internal quotations and citations omitted*).  Although ultimately a jury question, "the court makes the initial determination of whether reasonable minds could differ about whether the conduct was sufficiently extreme to result in liability." *Id*. For a negligent infliction of emotional distress claim, a plaintiff must allege: (1) duty, (2) breach, (3) proximate cause, (4) damage, and (5) "objective symptomatology." *Kumar v. Gate Gourmet, Inc.*, 180 Wash.2d 481, 505 (2014).

ORDER ON DEFENDANT INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL
AND TRANSPORTATION WORKERS, LOCAL
66'S MOTION TO DISMISS CLAIMS- 9

In his Second Amended Complaint, Plaintiff points to Local 66's delay in responding to his inquiries, failure to give him documents in a timely manner (or at all), and not grieving his termination, (or telling him such a grievance did not have merit), as the basis for his intentional and negligent infliction of emotional distress claims. Dkt. 40. Plaintiff also notes that his lawyer was reprimanded by the administrative law judge for his argumentativeness at his benefits hearing. *Id.*

Local 66's motion to dismiss these claims (Dkt. 53) should be granted. These claims implicate Local 66's duty of fair representation. Because national labor policy "vested unions with power to order the relations of employees with their employer" the Supreme Court found it "necessary to fashion the duty of fair representation." *Diaz v. International Longshore and Warehouse Union, Local 13,* 474 F.3d 1202, 1205 (9th Cir. 2007)(*internal quotations omitted*). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*

"[S]tates may not regulate activity that is actually or arguably protected or prohibited by the [National Labor Relations Act ("NLRA")]." *Adkins v. Mireles*, 526 F.3d 531, 538 (9th Cir. 2008). "'When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the NLRA, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.'" *Id.,* (*quoting San Diego Building Trades v. Garmon,* 359 U.S. 236, 244 (1959)).

Moreover, §301 of the LMRA preempts these claims because both claims cannot be maintained without the Court interpreting the provisions of the CBA. "LMRA § 301 preempts

state-law claims that are 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Adkins,* at 539 (*quoting Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)). "LMRA § 301 will operate to preempt a state-law claim whose resolution depends upon the meaning of a CBA." *Id.*  Further, the LMRA § 301 preemption "extends not only to claims founded directly on rights created by collective bargaining agreements, but also to claims which are substantially dependent on analysis of a collective bargaining agreement." *Id.* (*internal quotations and citations omitted*).

    Plaintiff founds his intentional and negligent infliction of emotional distress claims on Local 66's actions in representing him regarding his termination.  His claims, are in effect, claims for breach of the duty of fair representation, and so are preempted.  These state law claims "seek to enforce duties that Local 66 owes in its capacity as Plaintiff's union representative. *Adkins,* at 540.  "[T]he duty of fair representation occupies the field of regulation affecting how a union must relate to its members in the process of carrying out its representational functions." *Id.*  "A great risk exists that a federal court's grant of relief under a state-law tort claim designed to enforce minimal standards of decency" (like either the intentional or negligent infliction of emotional distress claims here), "would regulate the manner in which a union interacts with its members in the course of performing its duties as collective bargaining representative in a way that federal law has chosen to leave unregulated." *Adkins*, at 541.

    Further, the timeliness and adequacy of its response would depend on interpreting the meaning of terms in the CBA. *Adkins,* at 539. Even if his claims weren't founded directly on the CBA, they are "substantially dependent" on analysis of the CBA.  Plaintiff's claims for intentional and negligent infliction of emotional distress should be dismissed.

ORDER ON DEFENDANT INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL
AND TRANSPORTATION WORKERS, LOCAL
66'S MOTION TO DISMISS CLAIMS- 11

### E. WRONGFUL DISCHARGE CLAIM

"The common law tort of wrongful discharge is a narrow exception to the terminable-at-will doctrine. The tort of wrongful discharge applies when an employer terminates an employee for reasons that contravene a clearly mandated public policy." *Danny v. Laidlaw Transit Servs.*, Inc., 165 Wn.2d 200, 207 (2008).  To maintain a wrongful discharge claim, a Washington plaintiff must allege: (1) "the existence of a clear public policy (the clarity element);" (2) "that discouraging the conduct in which [the plaintiff] engaged would jeopardize the public policy (the jeopardy element);" (3) "that the public-policy-linked conduct caused the dismissal (the causation element);" and (4) the employer "must not be able to offer an overriding justification for the dismissal (the absence of justification element)." *Id.*

Local 66's motion to dismiss Plaintiff's wrongful discharge claim (Dkt. 53) should be granted.  As was the case for the intentional and negligent infliction of emotional distress claims, Local 66's actions in relation to the termination of Plaintiff's employment directly implicate the union's duty of fair representation. *Adkins,* at 540.  The above preemption analysis applies to Plaintiff's claim for wrongful termination against Local 66, and the claim should be dismissed.

Further, Plaintiff does not allege that Local 66 was his employer, (Plaintiff alleges that Brower was his employer), nor does he allege that Local 66 was an agent of Brower.  Plaintiff fails to allege any facts to support any of the other elements of wrongful termination to state a claim against Local 66.  This claim should be dismissed.

### F. REMAINING CLAIMS AGAINST LOCAL 66

Currently, Plaintiff's remaining claims against Local 66 are a claim for breach of contract and breach of the duty of fair representation.  If Plaintiff chooses to file a third amended

complaint, he only has leave to attempt to properly plead his defamation claim. Other alterations in the Plaintiff's third amended complaint, if any, must be made in accord with the rules.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff's August 5, 2016 pleading entitled "Third Amended Complaint as a Matter of Course" (Dkt. 56) **IS STRICKEN**;

- Defendant International Association of Sheet Metal, Air, Rail, and Transportation Workers, Local 66's Motion to Dismiss Claims (Dkt. 53) is **GRANTED** as follows:

  - Plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful termination **ARE DISMISSED WITH PREJUDICE**;

  - Plaintiff's claim for defamation **IS DISMISSED WITHOUT PREJUDICE**;

  - Plaintiff may, if he chooses, file a third amended complaint to plead sufficient facts to make a defamation claim, on or before August 26, 2016.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15th day of August, 2016.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANT INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL 66'S MOTION TO DISMISS CLAIMS- 13